IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT, MAY TERM 1835.

## Boyer *against* Smith.

A landlord, against whose tenant a recovery was had in ejectment, although he was no party to it, and not in the actual possession of the land, is liable to an action of trespass for mesne profits : hence, upon the trial of such ejectment, the landlord cannot be made a competent witness by a release from the tenant.

In an action of ejectment against one who had been a tenant of the plaintiff, before the defendant will be permitted to give evidence of a title different from that of him who had been his landlord, he must prove that he quitted and fairly gave up the possession of the premises to the lessor, and afforded to him time to go and repossess himself. That the tenant went and notified his landlord that he had quitted, and surrendered the possession, and then immediately returned and took a lease from an adverse claimant, and went into the possession again, is not such a surrender as will entitle him to protect his possession under the title of such adverse claimant.

A recital in a will under which a plaintiff claims title, which tends to prejudice the defendant's title, should not be given in evidence.

ERROR to the common pleas of *Dauphin* county.

This was an action of ejectment by George Boyer and Samuel Boyer, executors of George Boyer deceased, against Jacob Smith. All the facts and bills of exceptions are clearly stated in the opinion of the court. The cause was argued by

*M'Cormick* and *Weidman*, for plaintiffs in error. Cited, Graham *v.*

III.—3 G

[Boyer v. Smith.]

Moore, 4 *Serg. & Rawle* 467; 2 *Burr.* 468: to establish the position that one who had been a tenant of the plaintiff in ejectment, will not be permitted to give evidence of a title different from that of his landlord, until he has clearly shown a surrender of possession.  Jackson *v.* Stone, 13 *Johns. Rep.* 447; 8 *Cowen* 290; Osbourn *v.* Osbourn, 11 *Serg. & Rawle* 55; 3 *Term Rep.* 303; 1 *Saund. Pl. & Ev.* 478; *Cowp.* 621; *Wood. on Land. & Ten.* 511 : to show that a landlord cannot be made a competent witness to establish the title of his tenant, because he is liable to an action of trespass by the plaintiff in ejectment, and the record would be evidence against him.

*J. A. Fisher* and *Fisher*, for defendants in error.    That an action of trespass for mesne profits will only lie against a tenant or a defendant in ejectment : *Run. on Eject.* 438, 441 ; 2 *Burr.* 667 ; *Wood. on Land. & Ten.* 421.

The opinion of the Court was delivered by

KENNEDY, J.—This was an action of ejectment, brought in the court below by George Boyer and Samuel Boyer, executors of the last will of George Boyer the elder deceased, to recover the possession of one hundred and twenty-seven acres and ninety-five perches of land, devised by the testator to his executors, for the purpose of being disposed of in the manner therein directed.    On the trial of the cause it was shown that the legal title in fee to the land was in the testator before the making of his will, and continued to be so until the time of his death.    It was also shown, on the part of the plaintiff, that on the 23d of December 1825, Jacob Smith, the defendant in this action, took a lease of the land in question of the testator for a term of three years, to commence " from the 1st day of April then next ensuing," at the yearly rent of 275 dollars, to be paid quarterly : under which the defendant entered and took possession of the land.    The will of the testator was given in evidence so far as to show that the plaintiffs had the same right to maintain this action that the testator himself would have had in case he had lived. There was a recital in the will, which the court, on the objection of the defendant's counsel, refused to permit the counsel of the plaintiffs to read in evidence to the jury.    This has been made the ground of the first error assigned.    The counsel for the plaintiffs, however, have very properly forborne to press it ; for the court were unquestionably right in the opinion thay gave in respect to it.

After the plaintiffs had closed their testimony in chief, the defendant, in order to repel their claim, then offered " to prove that Jacob Smith removed from the property in dispute all his personal property and family on the 1st day of April 1829, and came down to Harrisburg and informed George Boyer (meaning the lessor and the testator) that he had removed all his property and family from the premises, and then surrendered up the possession of the property to Boyer, and told him to go and take possession of it.    That Henry

[Boyer v. Smith.]

Fox, after Jacob Smith had removed all his property and family from the property, entered into and took possession of the same, and this without any fraud or collusion between him and Jacob Smith, and without Smith's knowledge that he, Fox, intended to take possession." To this the plaintiffs' counsel objected, but the court overruled the objection, and agreed that the defendant might give the evidence. The counsel of the plaintiffs excepted to this, which forms the second error assigned. I am unable to perceive any error in the court's permitting the defendant to give such evidence if he had it. It might have served as an introduction to other evidence showing that Smith had afterwards come fairly into the possession of the land in question under a title paramount to that of the testator. But still it remained with the court, after the evidence should have been given, as I shall show in my notice of the fourth error assigned, to decide whether it tended to prove a fair surrender of the possession by Smith, the tenant, to his landlord, or not.

Under this permission of the court, the defendant then offered Henry Fox as a witness, under whom he admitted that he obtained and held the possession of the land by a lease from Fox, as guardian for one of the children of Michael Boyer; but showed that he had released him from his responsibility as landlord by a deed which was produced by Fox. The plaintiffs, however, still objected to his competency, on the ground of his being liable to them, in case of their recovery in this action, for the mesne profits of the land, and that he was therefore interested in the result of the trial. The court however overruled the objection, and admitted him to testify, to which the counsel for the plaintiffs excepted; and this is made the ground of the third error assigned. Now it is clear, that if the plaintiffs had recovered in this action, they could have maintained an action of trespass, and would have been entitled to recover in it the mesne profits of the land. But to enable them to sustain such action, a previous recovery in this action was indispensably necessary. For the action to recover the mesne profits being an action of trespass, founded on a violation of the possession of the plaintiff, cannot be maintained by a party who is not in the possession of the land at the time; and it is only by obtaining possession under a recovery in the action of ejectment, that his possession will relate back to the commencement of his right or title, and that he will be enabled to maintain the action of trespass for the mesne profits as far back as he can show title, and is not barred by the statute of limitations. Metcalf v. Hervey, 1 *Ves.* 249; *Bull. N. P.* 87, 88; *Adams on Ejectment* 334, 335. In this case then, if the plaintiffs had recovered, Smith, the defendant, would have become thereby liable to them for the mesne profits; and against him it is not questioned but the action might have been maintained for the recovery of the same. But in trespass it must be recollected that all are principals, as well those who command, direct, or even advise the act to be done, though not present at the doing of it, as those who commit the act under their

[Boyer v. Smith.]

direction or advice. Hence the person who puts another into the possession of land as his tenant, to which he has not a good right, is as much a trespasser, as the tenant who enters upon the land and holds the possession thereof from the true owner. It is also well settled, that all concerned in committing a trespass are liable to be sued, either jointly or severally, by the party injured, at his election, for the damages occasioned thereby. And hence Henry Fox, who put Smith into the possession of the land, and as he testified himself, went into the actual possession with him, and even carried the first article of Smith's property back into the house on the land that was taken, would have been liable for the mesne profits to the plaintiffs, in case they had recovered the possession of the land by means of this action. But if by his testimony he could defeat the plaintiffs' recovery in this action, he of course thereby acquitted himself from all liability to them for the mesne profits. He was therefore directly interested in preventing the recovery of the plaintiffs, and was admitted as a witness for the very purpose of bringing about this end. It is no answer to this objection of his interest in the event of the suit, to say that he acted as guardian for his ward, who, as he believed, had a right to the land. Because a guardian, who commits a trespass as such, is liable to be sued for it, and to make compensation for the injury occasioned thereby, just as much as if he had done it entirely for his own benefit. The law will not tolerate a person in any character to trespass upon the rights of others. In Chirac *v.* Reinecker, 11 *Wheat.* 280, it was settled that a landlord, against whose tenant a recovery was had in ejectment, though the landlord himself was no party to the ejectment, and whose name did not appear on the record of it at all, was liable in an action of trespass for the mesne profits; and that the record of the action of ejectment and the judgment therein were admissible as evidence for the plaintiff in the action for mesne profits, to show the recovery of the possession of the land by means of it, but not to show title against the landlord conclusively, who was still at liberty to prove that he had a better title than the plaintiff, notwithstanding his recovery in the ejectment. The correctness of this decision cannot be questioned, I apprehend, either upon principle or authority ; and I take it to be decisive of the question raised in this third error. It shows clearly that the court below were wrong in admitting Fox to testify on behalf of the defendant. The release of the defendant to the witness, though it discharged him from his liability to the defendant, in case he should be evicted by the recovery of the plaintiffs, did not in the least discharge him from his liability to the plaintiffs for the mesne profits of the land, so that he was still most obviously interested in preventing the plaintiffs' recovery; and we therefore think that there is error in the third bill of exception.

Henry Fox, after being admitted, testified, that having understood that Smith had moved from the land on the last day of March 1829, he went to the house on it the following morning, when he found

[Boyer v. Smith.]

it empty, and Smith gone from it with his family and all his property. That having gone thither for the purpose, he took possession of it as the guardian of Michael Boyer's daughter by his second wife. That he had heard that Smith was moving out, but could not tell from whom he heard it. That some of Smith's goods were at Mrs Reel's, and some were on the road side, four or five perches from the house and land in question, but within a foot or two of Mrs Reel's house. He was told upon his arrival that Smith was gone to Harrisburg. Smith returned about eight or nine o'clock in the morning of that day, while witness was there, and told witness that he had been to see George Boyer, his lessor, in Harrisburg (a distance of five miles), and told him (Boyer) that he had moved out. Smith also told the witness that he had no home to go to ; when the witness in reply said he would rent the land in question to him. This was about ten o'clock A. M. of the 1st day of April 1829. A bargain was then concluded between them, by which the witness leased the land to Smith at a rent of 120 dollars per annum ; and Smith moved immediately back with his family and property into the house upon the land; and the witness himself moved the first article of Smith's property into it. Smith had persons there to assist him in moving back again. When Smith returned from Harrisburg to the land that morning he was on horseback, riding at a pretty fast trot. The witness saw nothing of the Boyers there that day. After that Smith had moved back on the land, the witness came home, which was about dinner-time of the day. This witness also testified that Michael Boyer had left three children behind him at his death, all minors, two by his first wife, and one by his second, who survived him, and married Smith the defendant afterwards. That witness took possession of the land as the guardian of the last child only, and had received rent for the whole of the land without accounting to the other children or their guardians for any portion of it.

It was further testified by George L. Mytinger, another witness for the defendant, that Smith, the defendant, called upon him and George Capp in Harrisburg, where Boyer the lessor then lived, on the morning of the 1st of April 1829, about eight o'clock, and asked them to go with him to Boyer's and witness his giving up the house. That they accordingly went with him to Boyer's, where Smith, being on horseback, and without alighting, said to Boyer, whom he met at the door of his house, "In the presence of these witnesses, I give up the property I live on, the tavern and plantation." Boyer was very deaf, but appeared dissatisfied. ·

After giving this evidence, the defendant then offered to prove " that Michael Boyer (the father of the ward of Henry Fox, and the son of the lessor) went into possession of the property in dispute about the year 1811 or 1812, under a parol gift from his father, and continued in possession until his death, by the repeated declarations of George Boyer from 1815 down to the time of the death of Michael Boyer in 1825 and after Michael Boyer's death. That he made

[Boyer v. Smith.]

valuable improvements upon the same in pursuance of that agreement."

To this the counsel of the plaintiffs objected, alleging that the defendant had failed to give evidence which even tended to show that he had surrendered the possession of the land to George Boyer, his lessor; and that it was not therefore competent for him to set up a title to the land in a third person adverse to that of his lessor. The court however overruled the objection, and permitted the defendant to give the evidence. To this opinion of the court the counsel for the plaintiffs took exception, and have made it the ground of the fourth error.

The only question presented in it is, did the testimony given by Fox and Mytinger on behalf of the defendant tend to show a surrender of the possession by Smith to Boyer; or, in other words, was it such from which the jury could fairly have inferred a surrender after the expiration of the lease. Because, without a complete and fair yielding up of the possession by the tenant to his landlord, at or after the expiration of the lease, it is well settled that the tenant shall not be permitted to controvert the title of his landlord.

Then does the evidence of Fox and Mytinger tend to prove such a surrender by Smith? If it were to be held sufficient to warrant a jury in coming to that conclusion, the inevitable consequence would be, that the rule of law which declares that a tenant shall not be permitted to set up an outstanding title, either in himself or in any third person, different from that of his lessor, would be of little avail or protection to the landlord, for which end it was wisely and specially designed. In short, it would be a sheer mockery of what in law is deemed a surrender of the possession, to hold that it could be inferred from such evidence. The lease did not expire until the day that Smith, according to the evidence, called on Boyer to give him notice that he yielded him the possession; after which he allowed no time for Boyer to go and take the possession, before that he was back again in it himself with all his family and property. Besides, it is impossible not to see that the whole thing was a mere contrivance, to which Smith and Fox were privy in some way. If they did not communicate previously with each other directly on the subject, it cannot be doubted but that they played into each other's hands by some signs given to them from some source which they understood, for the purpose of preventing Boyer from taking possession of the land. It is perfectly manifest that Smith did not expect to part with, and indeed I think I may safely add, did not intend to give up the possession to Boyer: for according to his own declaration, given in evidence by his own witness, he had provided no other place to move to with his family; and had not even procured a shelter for all his movable property. Besides, if he had intended giving up the possession of the land, why should he have given himself the trouble of riding five miles into Harrisburg to notify Boyer, as he did. Can it be believed that he did it with a view to oblige Boyer, in

[Boyer v. Smith.]

order that Boyer might take the possession and provide a new tenant as early as possible, without loss of time and rent. His manner of doing what he did in this respect, as well as his subsequent conduct, demonstrates that this was not his intention, but that it was done for the purpose of affording himself a pretence for retaking the possession on his return, under the claim of some *other* person, whom it would seem he very luckily met with, but I suppose not unexpectedly, waiting to accommodate him to the fullest extent of his wishes. A very extraordinary coincidence indeed, if the effect of mere *chance;* but it is almost as easy to believe that Homer's Iliad was produced without design, as that the circumstances under which Smith retook the possession of the land, happened without concert and co-operation. The haste too with which the pretended surrender and retaking of the possession by Smith were done, rendered it almost impossible for Boyer, with the greatest possible exertion, assisted by all the means imaginable, to have gone out five miles to *the land, after the notice given, and to have taken possession of* the land before that the defendant was back in it again. Now, as between the defendant and his lessor, it cannot be questioned but that the defendant was bound to allow Boyer at least a reasonable time to resume the possession, before that he himself attempted to retake it, either of his own authority, or under that of another. Then, admitting all the evidence given on the part of Smith to be true, and the most favourable construction that it will possibly bear to be put on it for him, did he allow Boyer a reasonable time for taking the the possession before that he retook it himself? It appears to me that there can be but one answer given to this question; and that it must be in the negative. It would be revolting to the common sense of every man to answer otherwise. It is not only evident from the testimony of the defendant himself that no reasonable time was allowed for such purpose, but that he had resolved with himself not to allow it, lest Boyer should improve it by taking the possession. In short, it is plain from his own showing that he had determined to prevent Boyer from retaking it, by seizing it himself and withholding it from Boyer. It is most obvious that the arrangements were all made for that end, and no other. Smith had provided no other place to move to, nor had Fox procured any other tenant than Smith for the land to take the possession of it. Now although it is the duty of the court, wherever evidence offered to be given by a party has the slightest tendency to prove any fact or circumstance material to the issue, to admit it to go to the jury, from whom the court cannot afterwards withdraw it; yet it belongs to the court exclusively to decide in the first place, whether the evidence offered, if true, tends to prove any thing material to the issue or not, and if it does, not to reject it when objection is made by the adverse party to its being given : so after the party has been permitted to give the evidence, and he has given all that he had to support his offer, it also belongs to the court, and it is its duty if called on for that purpose,

[Boyer v. Smith.]

to decide whether the evidence so given under the offer comes up to it or not, and tends to prove what the party alleged it would.   Hence, in the present case, as the evidence given by the defendant fell short of tending in the slightest degree to prove a surrender of the possession of the land to Boyer, it was the duty of the court below to have so decided, and to have rejected the evidence offered for the purpose of showing a title in Michael Boyer.   We therefore think that there is error in the fourth bill of exception.

It is unnecessary to decide upon the remaining exceptions, because the questions involved in them could not have arisen had the matters in the exceptions already noticed been correctly decided by the court below.   And as we think they cannot be brought before the court for their decision on the future trial of this cause, we deem it unnecessary to express any opinion in regard to them now.

Judgment reversed and a *venire de novo* awarded.