# Boyer *against* Smith. (*a*)

In an action of ejectment by a landlord against a tenant, it is not error, that the court refused to permit one who claimed title adversely to the plaintiff, to be substituted as a co-defendant.

Lessees cannot impeach the titles of their lessors for any cause whatever, except for fraud upon themselves or the commonwealth.

One who had occupied part of the premises for which an ejectment was pending, is an incompetent witness upon the trial of the cause, because of his liability in a certain event for mesne profits.

*Quere.* Whether in an action of ejectment a refusal to permit co-defendants to be substituted, is the subject of exception and review on a writ of error.

ERROR to the Common Pleas of *Dauphin* county.

This was an action of ejectment by George Boyer and Samuel Boyer, executors of George Boyer, deceased, against Jacob Smith.

The cause having been ordered on for trial, George W. Boyer, Mary Ann Fought, and others, heirs at law of Michael Boyer, deceased, alleged that the said Michael Boyer had died seised and possessed of the land in dispute, and prayed the court to permit them to be made co-defendants; which the court refused, and sealed a bill of exceptions at the instance of the defendants.

Plaintiffs offered articles of agreement, dated the 25th of December 1825, between George Boyer, Sen., and Jacob Smith, to which offer and evidence defendant's counsel objected, that George Boyer, Sen., had no title to the land mentioned, and was not, and had not been in possession for eighteen or nineteen years previous to the date of the agreement; which objections the court overruled and admitted the evidence, to which admission defendant's counsel excepted.

The plaintiffs then gave in evidence the lease, by which it appeared

(*a*) For the former report of this case see 3 *Watts*, 449.

that Smith, the defendant, was the tenant of, and obtained the possession from, George Boyer, the plaintiffs' testator.

" After the evidence given in this cause by the plaintiffs, the defendant offered to prove and give in evidence, that Michael Boyer died seised of the lands and premises in the ejectment on the 23d of October 1825, leaving a widow and four infant children, one of whom is since dead, to whom the said estate descended. That on the same day that the said Michael was buried, to wit, 25th of October 1825, his two brothers, George and William, took out letters of administration on his estate, and then fraudulently combined with their father, to dispossess the said widow and children of the said estate, and that in pursuance thereof, a lease was made thereof to Jacob Smith, the present defendant, for three years. That they then proceeded to sell and dispose of all the moveable property of the intestate, and on the first day of April 1826, entered into and upon the said lands and premises, and forcibly ousted and disseised the said widow and children, from their possession and freehold aforesaid, except a room in the dwelling house on said premises, which the widow and children of the said intestate held possession of, declaring that she would do so to keep the possession for her children, until she was carried out. That the lease so made as aforesaid, was for the express purpose of cheating and defrauding her and her children out of the estate. [The defendants, the children and heirs at law of the said Michael Boyer, will further prove that on the 1st day of April 1829, the said premises being vacant, the said lessee having on the preceding day removed therefrom, Henry Fox, guardian of one of the minor children, entered, before descent cast in and upon the said lands and premises, for the use of the said children and legal representatives of the said Michael Boyer, deceased, without any fraud or collusion with the said Smith, and afterwards leased the same to the said Jacob Smith, the former tenant, who has held the same under him ever since for the use of the said children and heirs, who are now the real defendants in this case.] All this for the purpose of showing the fraud practised in procuring and obtaining the possession of the property, by George Boyer, Sen., the disseisin committed and also the entry by Henry Fox, the guardian of Catharine Boyer, one of the heirs of Michael Boyer, for the purpose of obtaining possession from the disseisors. To which offer and evidence the plaintiffs' counsel then and there objected, that parties named, viz. heirs of Michael Boyer, are not parties, and if parties, the rights of defence cannot be obtained, and that the testimony is not for the purpose for which it is offered, which objections the court overruled, so far as relates to that part of the offer as marked in brackets, for the purpose of showing a surrender by Smith under his lease to his landlord in the first place, reserving the inquiry as to the right of Henry Fox, the guardian, till the surrender is shown; the residue of the offer, being that part not included in

[Boyer v. Smith.]

brackets, the court rejected, to which rejection of that part of the evidence, defendant's counsel then and there excepted.

Defendant then called George Homman, who testified that on the last day of March, and the 1st of April 1829, he lived in the house of Mrs Reel, four or five rods from defendant. On the last day of March, defendant came to me and asked me for a place to put his property in till he could get a house; I said I had given up my house to Mrs Reel, but I would speak to her. I asked her; she said I should give him such rooms as he could put his property into; I showed them to him and he moved his property there the same day; next morning he went to town; Smith's own family came over there too; when he returned he said he had given up his possession to Boyer, and said he had no house yet. Before he had returned, Mr Fox had come and taken possession of the house Smith had removed from; may have been about seven or eight o'clock, A. M., when Fox took possession; that on the first of April, when Smith came back, Fox told him he would rent him that house, he should move into it, the same house Smith had left the day before. They began to bargain, some time at bargaining, long enough that they might have made three bargains, as I told them. In the afternoon Smith removed into the house he had left; think the bargain was not reduced to writing that day. Fox told Smith if he did not rent he could give it to another, and if Smith did not give what he asked he would give it to another, but as Smith had been there he should have the first offer. Smith said it was a great rent to pay, house scarce worth so much; what rent Fox asked him I do not remember. From the time Smith returned until he concluded the bargain with Fox, and moved in again, Boyer might have come from Harrisburg and have taken possession. Defendant's counsel then proposed to ask witness " whether he was not told by Smith, and whether it was not reported in the neighbourhood that Boyer had rented the property in question to another person, and whether that was not the reason Smith moved out?" To which question plaintiffs' counsel objected, which objection the court sustained, and rejected the question, to which rejection and refusal, defendant's counsel excepted.

Witness. Smith only asked me for one room, more could not be spared from the house.

Cross examined. Smith returned late in the morning, perhaps between eight and nine o'clock. Smith was on horseback when he returned. Fox had been there, perhaps one hour or two, when Smith returned. This was on the 1st of April 1829. Smith got his property back to his house perhaps from one o'clock till night of the same day. I can not tell what time in the morning Smith left home; he might have started after day light and I not have seen him. Smith is a married man, I believe, married to Eleanor Boyer, widow of Michael Boyer; think he had married her before the 1st of April 1829. Think not a year before. They have lived to-

gether ever since they were married. They have lived together on this property except the night of the last of March 1829. Fox was there when Smith returned; they commenced bargaining soon after Smith. returned; they began sooner than an hour after Smith returned. They met pretty soon after Smith returned. Fox had locked the door of the house Smith left, and came over to Mrs Reel's, when Smith returned. Think they met as soon as Smith got off his horse at our door and came in. A few minutes after Smith returned Fox offered Smith the house. They continued to bargain from that time till they closed the bargain about the middle of the day. As soon as Smith returned and came into our bar room where Fox was, Fox asked him whether he had got a house in town —Smith said not. Fox then told him he had taken possession of the house Smith had left and had it for rent, and then told Smith he would rent it to him. Smith asked him what rent he would ask; Fox told him; I do not remember the amount.

Defendant then called and offered as a witness in the cause, Joseph Smith, who, being sworn on his *voir dire* at the instance of the plaintiff, answered: " I am son of defendant. I occupied after my marriage, some years ago, part of this property, part of the house for two years, last year and year before. I left it four or five weeks ago."

Cross examined. " I live now in my own house, not on these premises. I moved into this property in dispute after this suit was brought."

To whose admission as a witness, plaintiffs' counsel then and there objected, that he was liable to plaintiffs for mesne profits if plaintiffs recover in this suit, which objections the court sustained and rejected the witness; to which rejection defendant's counsel then and there excepted, and prayed the court to sign and seal this his fifth bill of exceptions, which is done.

Defendant then called William Blair, who testified that he assisted to move Mr Smith's family and furniture from these premises on the last day of March 1829. They were moved to Mrs Reel's. The beds were put into a room and on the upper porch, and all the best things that could not stand out in the weather, all under cover. The bedsteads put into shed across the road from Mrs Reel's house on Mrs Reel's property; shed had no floor. Two of Mr Smith's family slept at my mother's the night of the 31st of March 1829. She lived in a house of Mrs Reels below Mrs Reel's tavern house, about five rods from Mrs Reel's tavern—the rest of Smith's family were at Homman's or Mrs Reel's that night. I was on the porch of the house that Smith left on the morning of the 1st of April 1829, when Fox came there—when he came he asked me if I helped to move Smith out; I told him I did. He asked me and three or four others on the porch to go with him through the house and see if every thing of Smith's was out; we went all through the house with him; we found nothing in it; no person in the house. By this

[Boyer v. Smith.]

time Jacob Updegrove came there; Fox told him we had been through the house and found nothing in it; I said I would go away; Fox said I should not till the Boyers should come up. He then said he wanted to keep possession of the house as guardian of Catharine Boyer. I remained there till the Boyers came up which was sometime in the forenoon of the day. After Boyers came up sometime Fox went over to Mrs Reel's, where Boyers were. Fox locked up the house when he went over to Mrs Reel's. There was two hours between the time Boyers came there and Jacob Smith began to move in; I can not say whether he began to move in whilst the Boyers were there or not. Fox was about an hour and a half in possession of the house in dispute, before Smith came back. When Fox first came there he asked where Smith was, and I told him he had gone to town. I helped to move Smith in again; he began about 1 o'clock, P. M. Smith asked me to help him to move in; he came over to my mother's and asked me; that was the first intimation he gave me that he was going to move in; Mr Fox moved the first article in; he took up foot of stove and took it into parlor. In doing that he told Smith he gave him possession nôw. Before Fox took up foot of stove, Smith said to him he had rented from him, and he wanted him to give him possession; then Fox took up foot of stove and carried it in. Smith had not attempted to take possession in any way before that. William Boyer was there on that day; can not say what he came for; heard no conversation between him and Fox; Fox not there on the 31st of March during moving out by Smith. Did not see him there on that day or night.

Cross examined. The stoves, and like of that, stood on the outside of Mrs Reel's house; upper side of her house, between it and the house Smith left, nothing but stoves left standing out; barrels put into shed; bedsteads, tables and barrels put into shed; shed middling large, part of it open at side next road. Things piled up in shed; not high shed; the horses kept in another part of shed; it had been allowed for horses, but never saw any in part articles put. Do not know what time Smith set out for Harrisburg in the morning. The rest of the young men, who helped to move him out, told me he had gone to Harrisburg; John and Jacob Kremer told me this, they lived in the farm house above, close above the tavern. Mr Smith's daughter and hired girl stayed at my mother's, over night. I did not see old George Boyer there; from the time Smith returned until he began to move in I was not there. Do not know where George Boyer, Sen., lived (admitted he lived in Harrisburg). It is called five miles from this property to Harrisburg. Old Mr Boyer quite an old man; looked like a man upwards of seventy years old; he was very hard of hearing; old George Boyer seemed to be smart on his feet; between two and three hours from the time Smith came back till he began to move in; he moved nothing in till after one o'clock; he came from Harrisburg about eight o'clock, A. M. He (Boyer) might have driven from Harrisburg to the place in dispute

in an hour. I had been there three or four months before this occurred. Kremer lived in tenant's house on this property at that time; cannot tell whether he moved out; his sons were helping Smith to move.

The defendant, after the evidence given by the plaintiffs, offered the record of the suit given in evidence by the plaintiffs, to wit; record of common pleas of Dauphin county, No. 408 of April term, 1829, to show that those proceedings were under the landlord and tenant law, which, after being prosecuted for some time, to wit, during the lifetime of George Boyer, Sen., was discontinued by his executors, the parties to the present suit, on the 30th of July, 1832, and the costs paid by them, with the writ No. 248, August term, 1832, being the writ in this suit, showing the same to be issued against Jacob Smith and Benjamin Umberger, for the purpose of showing that the plaintiffs abandoned all pretence or claim upon Jacob Smith, as their tenant, and brought their ejectment at common law, not against Jacob Smith only, but against Jacob Smith and Benjamin Umberger, to which offer and evidence, plaintiffs' counsel then and there objected, which the court sustained, and rejected the evidence offered, to which rejection of the evidence offered, defendant's counsel excepted.

Defendant then called George L. Mytinger, who testified as follows: Mr Smith called on Mr Kapp and myself, and took us up to Mr Boyer's house. Mr Boyer was called out, and, I think, told him he had given up possession of the house; he took us along as witnesses; Smith said to Boyer that he had given up possession of the property; do not recollect that he said to whom. He took us to be witnesses. I suppose, that he had given up possession of the property he had been living on; cannot say those are the words exactly. Think William and George Boyer were present when Smith told this to old Boyer; what Smith said was communicated to old Mr Boyer, I think, by William Boyer; old Mr Boyer said something angrily, but what he said I cannot tell. Cross examined. Mr Boyer a very old man at that time; I cannot tell what his age was; he was very hard of hearing; a stranger could not speak to him easily; I cannot tell the year or the day this happened. When we went up with Smith to Boyer's, I think Smith rode up on horseback; I do not recollect, but do not think he alighted from his horse when speaking to old Mr Boyer. Boyer was called to his door, and stood in his door; very short time at Boyer's door, not more than three or four minutes there, at furthest; I cannot say which way Smith went when he left there; I cannot say whether he remained there when Kapp and I left. This was in the morning, either before or after breakfast, I cannot tell which. This was whilst I kept tavern where John Kelker now lives; about seven years since I commenced keeping tavern; I commenced in August, and kept it that summer and year following; I cannot tell whether it was in April or May Smith called on me.

Defendant, after all the evidence given in this cause, offered the

record of the appointment of Henry Fox and Eleanor Boyer, as guardians of Catherine Boyer, a minor daughter of Michael Boyer deceased, made the 4th day of September 1828, to show the authority by which he entered into possession of the premises in dispute, together with a lease of Henry Fox to Jacob Smith, dated 1st of April 1829, *pro ut.* to the admission of which plaintiffs' counsel then and there objected that there was no evidence of surrender of possession by Jacob Smith, as tenant of George Boyer ; that the evidence given does not tend to prove a surrender ; that the defendant is tenant of the plaintiff, and therefore the evidence offered is irrelevant; which objections were sustained by the court, and the evidence of the lease offered was rejected; to which rejection defendant's counsel excepted.

Record of appointment of guardians read.

The heirs of Michael Boyer, before named, now ask to be substituted as co-defendants; and defendant, with the heirs, offer to prove, after the evidence given, that Michael Boyer died seised in his demesne as of fee of and in the premises described in the writ (and now the subject of controversy) on the 23d day of October, A. D. 1825, leaving a widow and issue three lawful children, then all minors, to whom the said estate descended. That on the day the said Michael was buried, to wit, on the 25th day of October 1825, his two brothers, George (one of the present plaintiffs) and William Boyer, took out letters of administration, and then fraudulently combined with their father, George Boyer, plaintiff's testator, to " disseise," the said widow and children of the said premises; that in pursuance thereof, the lease given in evidence by the plaintiffs was made and entered into; that the said George and William, the administrators as aforesaid, sold all the personal property of the said Michael. That the possession of the said Michael was kept and retained by the said widow and children, until the 1st day of April A. D. 1826, by personal residence thereon; when, in pursuance of the fraudulent combination aforesaid, the said George Boyer, Sen., the plaintiff's testator and lessor, with the aforesaid George and William, forcibly and fraudulently entered into and upon the premises and possession aforesaid, and ousted and disseised the said widow and heirs, and kept and detained them from the possession thereof until the 1st day of April 1829, when the possession aforesaid was peaceably retaken, and an " entry" made thereon by Henry Fox, the guardian of Catharine Boyer, one of the minor children of the said Michael Boyer. That the said entry was made during the lifetime of the said George Boyer, and before the right of entry of the said heirs was tolled by a descent cast; and that the heirs aforesaid are now in fact defending this suit. For the purpose of showing that the possession thus obtained by plaintiffs' testator and lessor was fraudulent—that the lessor of the plaintiff's was a disseisor and that the disseisees, the heirs aforesaid, entered legally into the possession of the premises before their right of entry was tolled, and therefore are now in as of their original title and possession,

[Boyer v. Smith.]

which is kept up and maintained by the present defendant, from them as their tenant, and therefore that they are entitled to retain the same. To which offer and evidence plaintiffs' counsel objected, for the reasons stated in the seventh bill of exceptions, which objections the court sustained, and rejected the evidence, to which rejection defendant and heirs of. Michael Boyer except. The court also overrule the application of the heirs of Michael Boyer to be made co-defendants, to which the said heirs excepted.

The defendant offered to prove that the possession of that part of the premises described in the memorandum to the lease, dated the 18th of July 1826 (as in the possession of the widow of Michael Boyer), given in evidence by the plaintiff, was continued and kept up by the widow, and Catharine Boyer, one of the heirs of the said Michael Boyer deceased, who died seised of the premises, from the time of his death in October 1825, until the 1st day of April 1826, and from that time until the time of the marriage of the said widow with Jacob Smith, about the 15th of September 1828, and from the 4th of September 1828, by the said Catharine (who was born in 1817), and her guardians, Eleanor Boyer, (now Smith), and Henry Fox, until after the bringing of this ejectment, and that the same is still held and possessed by the said Henry Fox as guardian of the said minor child, for the purpose of showing that the said Jacob Smith, the defendant, never was in the possession of that part of the premises, as the tenant of plaintiffs' testator and lessor, to which offer and evidence plaintiffs' counsel objected that it was irrelevant, and that the possession became Smith's on his marriage with the widow of Michael Boyer. The court say they will admit the defendant to prove that Fox had possession of the part in question, alleged to have been in possession of the widow in April 1826, between the 4th of September 1828, and the 1st of April 1829. Defendant's counsel reply that he will prove that the widow, as one of the joint guardians, had possession between September 4th, 1828, and the 1st of April 1829, and that this possession was the possession of both guardians, and enured to the benefit of the infant, and that the mother had possession, as natural guardian, from the death of Michael Boyer, in October 1825, until her appointment as guardian on the 4th of September 1828. The court then sustained the objections made by the plaintiff's counsel, and rejected all the evidence offered; to which rejection of the evidence as offered and set forth in this bill of exceptions, defendant's counsel excepted.

The defendant further offered to prove that Jacob Smith never went into possession of the premises, described in the lease given in evidence by plaintiffs, under George Boyer the lessor and the plaintiffs' testator, and that George Boyer, plaintiffs' testator, never had the possession of that part of the premises described in the supplement to the lease, dated the 18th of July 1826, at the time of making the lease aforesaid, nor ever since; to which offer and evidence plaintiffs' counsel then and there objected that it was irrelevant, and

[Boyer v. Smith.]

that the defendant cannot gainsay the title and possession of his land-lord, which objections the court sustained, and rejected the evidence offered; to which the defendant's counsel excepted.

Defendant's counsel then ask the permission to address the jury upon the facts of the cause as given in evidence; the court refused to permit the counsel of defendant to address the jury, and informed the jury that upon the evidence in the cause, it was the duty of the jury to find a verdict for the plaintiffs; to which decision of the court in refusing them permission to address the jury, as also to the opinion of the court, the defendant's counsel excepted.

The court (Blythe, President) thus charged the jury:

From the evidence in this cause the jury cannot, consistently with the law, do otherwise than find in favour of the plaintiffs, the whole of the lands described in plaintiffs' writ and description, including that part of the premises referred to in the supplemental agreement between George Boyer and defendant, as then in possession of the widow of Michael Boyer. Your verdict ought therefore to be in favour of the plaintiffs.

To this the defendant's counsel except.

Errors assigned.

1. The court erred in refusing the petition and application of the heirs of Michael Boyer to be made co-defendants as landlords of Jacob Smith, as set forth in the petition referred to in the first bill of exceptions.

2. The court erred in admitting the articles of agreement of the 25th of December 1825, as set forth and contained in the second bill of exceptions.

3. The court erred in rejecting the evidence as stated and contained in the third bill of exceptions.

4. The court erred in rejecting the question to the witness, as stated in the fourth bill of exceptions.

5. The court erred in rejecting the witness, Joseph Smith, as set forth in the fifth bill of exceptions.

6. The court erred in rejecting the evidence stated in the sixth bill of exceptions.

7. The court erred in rejecting the lease as stated in the seventh bill of exceptions.

8. The court erred in rejecting the evidence as stated in the eighth bill of exceptions; also, in again refusing to permit the heirs of Michael Boyer to be made co-defendants with Jacob Smith, as therein stated.

9. The court erred in rejecting the evidence as contained in the ninth bill of exceptions.

10. The court erred in rejecting the evidence offered and set forth in the tenth bill of exceptions.

11. The court erred in refusing to permit the counsel of the defendant to address the jury upon the facts of the cause, as given in evidence, as stated in the eleventh bill of exceptions.

12. The court erred in instructing the jury, that "from the evidence in the cause, the jury cannot, consistently with the law, do otherwise than find in favour of the plaintiffs the whole of the land described in plaintiffs' writ and description, including that part of the premises referred to in the supplemental agreement between George Boyer and defendant, as then in the possession of the widow of Michael Boyer," because by their own showing it is manifest that Jacob Smith was not at the time of the lease, under which alone plaintiffs claimed, nor at the date of the supplement thereto, nor ever afterwards in possession of that part of the premises held by the widow, as the tenant of George Boyer the lessor, under whom, and by virtue of whose lease, plaintiffs claim possession.

*J. A. Fisher*, for plaintiff in error.
*M'Cormick*, for defendants in error.

The opinion of the Court was delivered by

KENNEDY, J.—This cause was before us on a prior writ of error at the last term, when all the questions necessary to the determination of it, were not only elaborately discussed by the counsel concerned on both sides, but very fully considered and decided by this court.   See 3 *Watts* 449.

The first question raised here, and which was not brought up, in the same form that it is now, on the former writ of error, is, whether the court was not bound, as a matter of right, to have admitted George W. Boyer, Mary Ann Fought, with her husband James Fought, and Catharine Boyer, by her guardian, Henry Fox, to have become defendants with Jacob Smith the defendant below, in order that they might have joined with him in defending against the claim of the plaintiffs below.   We cannot overlook what it is impossible to disguise in this case—that Fox, the guardian of Catharine Boyer, and Smith, the defendant, combined together for the purpose of preventing the plaintiffs standing in the place of their testator, who was the lessor of the defendant, Smith, from obtaining or taking the possession of the leased premises after the term had expired.   It would be the most perfect mockery imaginable of all right, as between landlord and tenant, to permit such a trick as was attempted, in this case, to be practised by Smith upon his lessor, to pass for a surrender of the possession to him.   The possession of the tenant or lessee being derived from the lessor under the lease, became immediately upon the expiration thereof, the possession of the lessor, and continued to be so afterwards, until the former should make a fair surrender of it to the latter.   This possession the lessee was bound to deliver, whether his lessor had a good title to the land or not.   It would be against every principle of justice, as well as sound policy, to permit a tenant, either during the term of the lease as long as he continues to enjoy the land under it, or after the expiration thereof, to dispute his landlord's title

[Boyer v. Smith.]

or right to the possession of the land under any pretence. He is bound not only to surrender the possession at the expiration of the lease, but to pay up all the rent that may be due and in arrear, according to the terms of it. But if he were to be permitted to evade his obligation in this respect by such a juggle as was played here, the rule of law, which has been so wisely established for the protection of landlords or lessors, would be of little or no avail: because it may be practicable, perhaps in every case, for the tenant, at the expiration of his lease, to find a third person who may not only be willing to allege that he has an indisputable title or right to the land, but also willing to give the tenant a new lease of it, as was done here, without allowing the first lessor time sufficient to resume the possession, however anxious he may be to do so. The fact of the defendant, Smith, having taken the possession of the land under a lease from the testator of the plaintiffs below, was incontrovertibly established; and indeed was not denied by either Smith or those who applied to be made defendants with him; this being the case, it would have been repugnant to both the letter and the spirit of the act of assembly of 1772, to have permitted those applicants to have been made co-defendants; because they claimed the land not under the title by which the testator of the plaintiffs held it, when he leased to Smith, but in direct opposition to it. But it is plain, from the whole tenor of the act, that the great design of the legislature in passing it, was to prevent lessors, and those claiming under them, or consistently with them from losing the possession of the land letten by them to their tenants, either through neglect or design on the part of their tenants. For by the eighth section of the act, it is made the duty of the tenant, upon being served with a declaration in ejectment, forthwith to give notice to his landlord, under the penalty of forfeiting the value of two years' rent. And certainly there is no case to be found in which it has ever been even alleged, that a third person, claiming title to the land, can or ought to be made defendant by the court, in an ejectment brought by the lessor or those claiming under him against the lessee to recover the possession after the expiration of the lease. Indeed, so far from this ever having been conceived to be authorised by the statute of 11 *Geo.* 2, *c.* 19, *sect.* 13, of which our act is substantially a copy, the courts in England held at first, that no one excepting the lessor, or such as had become entitled to and had received rent under the lease, could be admitted to defend. Subsequently, however, it was made to embrace such as remainder-men and reversioners, whose rights are connected with the title of the lessor; but beyond this no one ever even imagined that it could be extended. See M'Clay *v.* Benedict, 1 *Rawle* 424. Supposing, then, this matter to be assignable for error, which may be somewhat questionable, at least in those cases where the matter of fact involved in it is contested, it can admit of no doubt that the court below were right in deciding as they did.

v.—I

[Boyer v. Smith.]

The second error assigned is, that the court admitted in evidence the articles of agreement or lease from George Boyer to Smith, the defendant below. There is certainly no reason for this exception. To permit a tenant to call in question the title of his lessor, is not to be endured in any case except where he has been induced to accept of it, to the prejudice of his own rights, or that of the commonwealth, by means of a fraud practised upon him by the lessor. That, however, is not pretended here. But it is alleged and argued that the lessor obtained the possession of the land, which he transferred under the lease to the defendant, by fraud and disseisin. And suppose he did, what has Smith to do with that? He held and enjoyed the premises under the lease during the whole of the term; receiving all the benefit and advantage from them that he could have done, in case his lessor had obtained the possession peaceably and fairly. He has, therefore, no reason to complain.

The third error is wholly untenable, and must appear to be so from what has been said above in regard to the second. Lessees are not to be allowed to impeach the titles of their lessors for any cause whatever, except it be for fraud, as already mentioned, committed either upon themselves, or against the commonwealth, in whose rights the lessee has an interest in common with the other citizens of the state, and therefore may be said to be prejudiced by the fraud in this latter case also, which may perhaps give him the right to take advantage of it.

The fourth error assigned is without even the shadow of a foundation to rest on. How can it be imagined that a party shall be permitted to make evidence for himself, by his own declarations? Yet this is the nature of the evidence rejected by the court, to whose opinion in doing so, the exception is here taken. The offer was by the defendant to give his own declaration in evidence in his favour, which the court refused to admit.

The fifth error is also destitute of tenability. Joseph Smith, on his *voire dire*, having shown to the court that he had lived on, and occupied, a part of the premises in dispute for some time during the pendency of the suit, showed that he had thereby made himself liable for a proportional part of the mesne profits to the plaintiffs, in the event of their recovering. He was, therefore, interested in defeating their recovery and could not be a witness against them.

The evidence offered by the defendant, and rejected by the court, to which the sixth error relates, had not the slightest tendency to prove what it was alleged to be offered for; nor does it appear to have been material to the issue between the parties in any point of view, and therefore was properly rejected.

The question presented in the seventh error, was decided when this case was here before: and according to the principles repeated now in observing on the previous matters assigned for error, the evidence offered was clearly inadmissible.

The eighth error is a mere repetition of the first, in which we have shown that the court decided correctly.

[Boyer v. Smith.]

In regard to the ninth error, it may be proper first, in order to have a more full comprehension of it, to state that it has been admitted by the counsel for the plaintiff in error, who was the defendant below, that George Boyer, his lessor, was not only originally the owner of the land in fee, but was invested also with the legal title to it, which continued in him till his death.　This was also all given in evidence on the first trial of the cause: but Michael Boyer, the father of the applicants to be made co-defendants, was the son of the lessor, and after being put into the possession of the land by his father, claimed to be the absolute owner of it, under a parol gift, as he alleged, from his father.　This produced a dispute between them, which was alleged to have been finally settled by compact, and a lease thereupon taken by the son from the father of the land for a term of five years, which expired shortly after the death of the son, and about the time the father leased the land to the defendant below.　This lease from the father to the son was also given in evidence on the first trial.　The widow of Michael Boyer, the son, lived in the house on the land, when George Boyer, the father, leased to Smith; and by the consent of Boyer the lessor and Smith the lessee, continued afterwards to occupy one or two apartments of it, until, perhaps, the time when she intermarried with Smith, the lessee; when it would seem, if not before, he got possession of the whole of it.　Smith, the defendant, also proved on the former trial, and likewise on the latter, that he and his wife and her children, so far as any of these were then living with her, evacuated every part of the house, leaving nothing in any part of it; thus showing most unequivocally and distinctly, that the possession of the whole was considered by them as having been derived under the lease from George Boyer, the lessor, and that, therefore, a colourable surrender of the possession, at least, was necessary to be made to him.　Under this statement of the circumstances, in relation to this branch of the case, it is perfectly obvious that the offer contained in the ninth bill of exceptions, which is made the ground of the ninth error, was but a mere artifice on the part of the defendant below, resorted to for the purpose of setting up the title of the heirs of Michael Boyer as a defence on the part of the defendant, Smith, against the plaintiffs, which had been overruled from the first by the court.　It was attempting to introduce by a side wind what the court had refused to admit directly; and we think the court were right in repelling it throughout.

The tenth error assigned is but another edition of the ninth, and requires no further notice.　The eleventh error has not been urged: and the twelfth, which is the only remaining one, we think cannot be sustained.　The court were right in instructing the jury as they did, because from the evidence there could be no question or controversy raised in relation to the fact of the defendant's having been in the possession of the whole of the land under the lease before the expiration of it.

Judgment affirmed.