JOSHUA STAFFORD, APPELLANT, vs. GEORGE W. ANDERS,· APPELLEE.-

1. Formal defences are dispensed with by rule of Court, such as *"defends against the wrong and injury, actionem non,"* and their use, even if improper, does not invalidate a plea.

2. A partial failure of consideration is made matter of defence by statute.

3. A sale of personal property, as of hogs, is not complete without delivery, identification or discrimination, and it is the duty of the vendor to make this, unless otherwise agreed.

4. A plea setting up a sale of 58 head of hogs, with a delivery of 25 and refusal to deliver the remainder, was held a valid defence as to those not delivered, and, if there was fraud in procuring the note, no recovery could be had upon it.;

5. A sale of State land by a trespasser confers no right, no title, and is no consideration for a note given for it. Whether a pre-emptioner may sell· was not decided by the Court.

This case was decided at Tampa.

Anders brought his action of assumpsit against Stafford upon two promissory notes, one for two hundred and nineteen dollars, and the other for one hundred and fifty dollars.

To the first count of the declaration the defendant pleaded specially, "that the consideration for which the

note mentioned in that count was made has in part failed in this, that a part of the consideration of said note was for a certain lot or stock of hogs, to wit: fifty eight in number, at the price of two dollars per head, making the sum of one hundred and sixteen dollars; and the said plaintiff then and there delivered to the defendant seventeen of said hogs; that the plaintiff represented to defendant that the remaining forty-one head were at Live Oak Pond and other places in Hernando county, and were gentle and manageable, and would come to defendant's call; that defendant did go to the places designated and called the hogs and hunted the range in and about the places aforesaid, and found only eight head, which were so wild and unmanageable that the defendant had to run them down with dogs and shoot a part, and that defendant hunted diligently for the remaining thirty-three head and has been unable to find them."

To the second count defendant pleaded specially a failure of consideration.

To the first plea the plaintiff demurred, alleging as causes of demurrer:

1st. That the said plea sets up no sufficient avoidance of the cause of action in the first count of plaintiff's declaration mentioned.

2d. It is not alleged in said plea that the note sued on was obtained by fraud.

3d. It is not alleged in said plea when the defendant went to the ponds, in the plea mentioned, to look after the hogs, nor when he hunted diligently for them.

4th. The plea in part impeaches the consideration on which the note was given, and is not sworn to, nor was it filed at the appearance term of the cause.

To the second plea plaintiff also demurred, alleging as cause of demurrer, among others, that it sets up no suf-

ficient legal avoidance of the cause of action set out in the second count.

The Court sustained the first ground of demurrer to the first and second pleas and overruled all others.

Defendant then, by leave, filed three amended pleas to the first count and one to the second count of declaration.

The first amended plea alleges, that "the consideration for which said promissory note in the first count men- tioned was given, has partially failed in this, that said note was partly given for fifty-eight head of hogs, at two dol- lars per head, which plaintiff agreed and promised after- wards to deliver to defendant, and defendant says that the said plaintiff did not deliver to the defendant the said fifty- eight head of hogs, but only delivered twenty-five head, and that plaintiff has refused to deliver the remaining thirty-three head," &c.

The second amended plea alleges, "that the plaintiff was indebted to defendant in the sum of sixty-six dollars, it be- ing the value of thirty-three head of hogs which the plain- tiff before that time promised to deliver to defendant, and the defendant offers to set off the said sixty-six dollars against as much of the said demand in the first count mentioned," &c.

The third amended plea alleges, that "the plaintiff ob- tained said note by fraud and misrepresentation in this, that he, the said plaintiff, represented to defendant that he would deliver fifty-eight head of hogs, provided defen- dant would give him the said promissory note mentioned in the first count of plaintiff's declaration, and defendant says that the plaintiff has fraudulently refused and does refuse to deliver part of said hogs, to-wit: thirty-three in number," &c.

The amended plea to the second count alleges, "that the promissory note mentioned in the second count of

plaintiff's declaration was obtained by the plaintiff from defendant by fraud and misrepresentation in this, that plaintiff was trespassing upon State land, and induced the defendant to give him said promissory note for the use and occupation thereof when defendant did not know that said land belonged to the State," &c.

The plaintiff demurred to the amended pleas, and alleged as causes of demurrer to the first amended plea:

1st. The plea defends against the whole count, and sets up only a partial failure of consideration.

2d. The plea sets up an agreement and promise of plaintiff to deliver the hogs therein mentioned to defendant after the note sued on was given, and such promise is *nudum pactum.*

3d. The plea in substance is such a plea as the first plea demurred to.

4th. The plea is, in many respects, insufficient.

To the second amended plea:

1st. The defendant offers in said plea to set off against plaintiff's demand the odds of the same thirty-three head of hogs which in his first plea are set up as the cause of a partial failure of consideration, and it is pleading in the matter of said hogs double.

To the third amended plea:

1st. The said plea is not a good, sufficient or legal plea of fraud against the said plaintiff's cause of action.

2d. The plea does not extend to the whole note declared on, and is therefore bad.

To the amended plea to the second count:

1st. It is in effect the same as defendant's original second plea, or plea to the second count in plaintiff's declaration, which has been demurred out.

2d. It is the plea of a tenant seeking to deny the title of his landlord.

3d. It does not set up any fraud practiced by plaintiff on defendant to induce defendant to execute the note sued on and pleaded to.

4th. It is not alleged that the note sued on was obtained by fraud and misrepresentation.

The Court sustained the demurrer to the amended pleas, except the first ground to the first plea, and allowed the plaintiff to amend his declaration and defendant to plead over within sixty days.

The defendant having failed to plead over, judgment by default was entered, and defendant appealed.

*James T. Magbee* for appellant.

*James Gettis* for appellee.

BALTZELL, C. J., delivered the opinion of the Court.

The plaintiff in the court below, George W. Anders, sued to recover upon two promissory notes, the one for $219, the other for $150, and obtaining judgment upon them, the defendant Stafford has appealed to this court, alleging error in the decision overruling his defences. To the first note he plead that "it was executed in part for a lot of stock hogs, to wit: fifty-eight in number, at the price of two dollars per head, making the sum of $116—that the plaintiff delivered him 17 of said hogs, and represented that the remaining forty-one were at different places in Hernando county—were gentle, manageable and would come to the call of defendant—that defendant did go to the places designated and called them and hunted the range thereabouts and found only eight head, which were wild and unmanageable, and that he hunted diligently for the remaining thirty-three head and has been unable to find them." The plea was demurred to as "setting up no sufficient defence, as not alleging that the note was obtained by fraud,

as not setting forth *when* defendant went to the ponds nor when he hunted diligently—that it impeaches in part the consideration on which the note was given, and was not filed at the appearance term, nor sworn to." The court sustained the first ground of objection and overruled the defence. Defendant then filed three amended pleas which were all demurred to. The first of them alleged, that " the consideration of the note had partially failed in this—that it was given for fifty-eight head of hogs at two dollars per head, which plaintiff agreed and promised *afterwards* to deliver to the defendant, and that plaintiff delivered only twenty-five and refused to deliver the remaining thirty-three head." The objection to this plea on the part of plaintiff was, that " the plea defends against the whole count and sets up only a partial failure of consideration—that it sets up an agreement of plaintiff to deliver the hogs after the note sued on was given, and such promise is *nudum pactum*, that it is in substance the same as the first plea demurred out, and is otherwise insufficient." The court sustained these objections except the first.

The exceptions to the plea are rather to its form, than to the merits contained in it. By our statute, a partial failure of consideration may be pleaded with the like efficiency as one that is total. It will prevail to the extent of such defence—see pamphlet laws of 1850, page 125. Of the same character is the objection, that " the plea defends against the whole count," by which is meant, that the plea commences by saying " the defendant comes and defends the wrong and injury, when, &c." Whatever force may have been attributed to these expressions by the early common law, in practice none has been allowed them here, and the rules of Court expressly declare that " no formal defence shall be required in a plea," and it shall commence as follows : " the said defendant by his *attorney says, &c.*," and

further that "it shall not be necessary to use any allega-tion of *actionem non*, or to the like effect, &c." Certainly then the improper use of terms declared to be unnecessa-ry cannot be considered to have the effect of invalidating a plea, if it be in other respects unobjectionable.

Passing from these, the question remains, is the plea good in substance.

Admitting that the agreement for the delivery of the hogs was made *afterwards*, and not at the time of the bar-gain, and that there was no agreement then as to the deliv-ery; the enquiry arises as to the effect of the agreement set up in the pleas, divested of all provision as to the de-livery.

Thus stated, the allegation of the plea is that " the note was given for 58 head of hogs at two dollars per head."

Such an agreement constitutes a sale, and will be found to be attended with the following results in contemplation of law:

" The simplest form of a sale is when the price is paid and the article is immediately delivered. But inasmuch as there can be a sale of a thing in future, and also, since the thing sold may not be in the actual possession of the seller, subsequent acts by one or both parties often become necessary in order to complete the sale."—Story on Cont. 304.

" Delivery completes the contract of sale, and vests the title to the property sold in the vendee, so that if they be destroyed afterwards by casualty he must bear the loss." —§ 503.

The first rule of law applicable to delivery, and to which *all other rules are subordinate*, is that no sale is complete so as to vest an immediate right of property in the buyer, so long as any thing remains to be done as between the buyer and seller. The goods sold must be *identified*,

*separated and distinguished* from all other goods, or from the bulk or mass with which they are mixed. When goods are sold by number, weight and measure, so long as the specific quantity or measure is not separated and identified, the sale is not completed, and the goods are at the risk of the seller." Story on Contracts and cases cited. Sec. 504.

" Where the seller has done every thing that is required of him as to a portion of the goods, yet something still remains to be done before delivery in regard to the rest of the goods, the goods which have been separated and designated, and are ready for delivery, became the property of the buyer and are at his own risk, but the part in which something remains to be done is at the risk of the seller, and as to them the sale is incomplete, nor does it make any difference in such case whether the contract be entire or severable. Thus where a quantity of starch in packages was bought, and it was agreed that the different packages should be weighed by the seller, who accordingly weighed a portion of the starch and delivered it to the vendee, and left a portion unweighed, and the vendee in the mean time became bankrupt, it was held that the weighing and delivery of a part of the starch, did not transfer to the vendee the property in that which was unweighed. When the whole duty of the seller is completed, and nothing remains to be done by him in relation to any part of the goods, a delivery of a part will be considered as constructive delivery of the whole, whenever the contract of sale is entire. And the same rule governs although the contract be severable, unless intention on the part of the seller to surrender only a part is either expressed or manifestly implied from the circumstances." Sec. 505.

" For a sale to be valid in law, there must be parties, a

consideration, and a thing to be sold."—Parsons on Contracts, 437.—" The thing sold must be specific and capable of *certain identification*."—Page 440.

" The property does not pass absolutely, unless the sale be completed, and it is not completed until the happening of any event provided for, or so long as any thing remains to be done to the thing sold, to put it in a condition for sale or to identify it, or discriminate it from other things, &c., unless this is to be done by the buyer alone."—*Ibid.* 441.

It is unnecessary to say, that by the plea no obligation of this kind rests with the buyer. We hold then, that under the facts set up by this plea, delivery was an essential part of the contract, and was incumbent on the vendor. Until this was had, the things sold were not specific, not capable of certain *identification.* Were it otherwise, we should be compelled to hold, that such sale gave the right to take fifty eight hogs of any description of the plaintiff's at the pleasure of the purchaser, any where and at any time. Not only does this plea set up a right to this, of this number of hogs from plaintiff, but a *refusal* on his part to deliver more than one half of those agreed to be delivered. Under such a state of facts, can it be possible, that a question or doubt can exist as to the impropriety of his demanding pay for more than the number delivered? We certainly feel none.

The Court then should have overruled the demurrer to this plea and not sustained it.

The second amended plea was not relied upon in argument, and is obviously not good, and the Court below was right in overruling it. The third alleges, that " the plaintiff obtained said note by fraud and misrepresentation in this, he the said plaintiff represented to this defendant, that he would deliver fifty eight head of hogs, *provided* said defendant would give him the said promissory note and

the said defendant says that the plaintiff has fraudulently refused to deliver part of said hogs, to wit : thirty three of them," &c. This also was demurred to, overruled and declared insufficient. With an admission of two such prominent facts by the demurrer, that of a condition attached to the bargain and refusal to observe it or comply with it, and fraud in the agreement, we cannot perceive the grounds for sustaining the demurrer.

" If the consideration of a contract be fraudulent, or at all tainted with fraud, it cannot support a promise; and not only fraudulent declarations or misrepresentations, but any other species of fraud will avoid a contract, and the fraud may be pleaded in bar of any action upon it."— Arch. N. P. 160.

It may be that the facts attending the refusal to deliver the remaining hogs should be more fully set forth, so as to show fraud, as that plaintiff sold and delivered to some other person, or destroyed them, or drove them off so that defendant could not get them ; yet without the fraud, with some indulgence to the pleading, for all the pleas seem to be indifferently drawn, we are not satisfied that the demurrer should have been sustained. It is well settled that " a subsequent failure of the consideration for which a bill or note has been given, either in the whole or in part, when of definite amount, such as the non-performance of a condition precedent, will afford a defence entirely or partially, and if a bill or check has been given, even on a verbal condition, which the drawer finds is to be broken or eluded, he has a right to stop payment and may defend an action thereupon." 1 Chitty on Bills, 76; 3 Campbell, 376 and notes. This is stated with a qualification, that " the matter which the holder has failed to perform must constitute the principal condition precedent upon which the bill was given, or it will afford no defence."—*Ibid.*

No doubt if fraud can be established in procuring the note, no recovery can or should be had upon it; and rejecting the fraud, or none being found to exist, a recovery should not be had under the facts set up by the plea beyond the number of hogs delivered.

The judgment on the demurrer to this plea should then have been for defendant, and not for plaintiff.

Another amended plea yet remains to be considered to this effect, that "the promissory note in the second count of the plaintiff's declaration was obtained by plaintiff from defendant by fraud and misrepresentation in this: Plaintiff was trespassing upon State land and induced this defendant to give him said promissory note for use and occupation thereof, when this defendant did not know that said land belonged to the State." This was demurred to on the ground that "a like plea had been demurred out; that it seeks to deny the title of his landlord; does not set up any fraud practiced by plaintiff on defendant to induce him to execute the note," &c. It is very clear, we think, that the plea is deficient in averments adequate to constitute a bar. It is not specific—too large and indefinite—yet we do not think it objectionable for the reasons stated in the demurrer.

The general rule is undeniable, we had almost said inflexible, that a tenant shall not deny the title of his landlord. It is founded in great wisdom, and should not lightly be impaired or infringed. It is not, however, universal in its application, nor without exception. Perhaps it may be said that the exception more firmly establishes the rule.

"If a tenant obtains possession from one who falsely represents himself to be landlord, he can show that the plaintiff was not landlord, nor the real owner at the time of the agreement."—Glenn vs. Rise, 6 Watts, 44.

" Again, a tenant cannot impeach his landlord's title, unless he or the commonwealth has been defrauded by the landlord."—5 Watts, 55 ; 4 S. & R., 382.

We quote from U. S. Digest, and regret very much not to have had more direct access to the authorities cited. The doctrine is so appropriate and founded in such reason and good sense as to commend itself to adoption, whilst its application to the present case would seem to be very clear. By the law of the State, it is made " the duty of the judges of the Circuit Courts to charge the Grand Jurors of their respective counties to present all and every person who shall hereafter *trespass* upon the public lands of the State, to the damage or injury of the same, whether the same are for the support of schools, seminaries or internal improvements, and the person convicted shall pay the costs and a fine equal to four times the amount of damage sustained by the State on account of said trespass."—See Laws 1848, p. 36. A trespasser is very obviously a man occupying the public land without right. To give sanction and validity to such sale would but invite the trespasses prohibited, so that the most strange and forbidding anomaly would exist of one department of the government prohibiting, by severe and positive penalties, a particular act, whilst another would be giving it encouragement. It may be said, that the nature of the trespass is not stated in the law. It is not difficult to see that the intrusion upon, and occupying of the land, holding it as owner, and treating it as such, are of themselves a trespass in like manner as if the land belonged to a private individual. Whilst declaring this, it is proper to state that the case of persons holding under, or entitled under pre-emption laws, is not embraced in the remark. The plea yet is so indefinite and wanting in precision and appropriate averments to bring

it within the law, that on this account it must be overruled. The judgment on the demurrer was therefore right.

The judgment of the Circuit Court will be reversed, set aside, and the cause remanded with directions to the court to give judgment on demurrer for defendant on the first and third amended pleas, and for plaintiff on the second and fourth pleas, and to award a repleader for further proceedings to be had therein, not to be inconsistent with this opinion.