[ PHILADELPHIA, JANUARY 16TH, 1840. ]

## ROBERTS *against* WILLIAMS.

IN ERROR.

1. A parol agreement, made at the time of a sheriff's sale of land under a judgment, between a person holding a mortgage upon the land prior to the judgment, and one who contemplated purchasing the land at the sale, that the mortgage might remain a lien on the land, and that the latter should be required to pay to the sheriff only the surplus of purchase-money beyond the amount of the mortgage, is not binding upon one who derived title from the purchaser at the sheriff's sale, without notice of the agreement.

2. An *alias scire facias* on a mortgage was issued against A., as administrator of the mortgagor, and terre-tenants. The sheriff returned "Nihil," as to A., and "made known," to B., C., D. & E., terre-tenants. F. was admitted, on petition, to defend *pro interesse suo ;* and at the trial offered to put in a special plea, which was refused by the Court : C., D., and E. also offered to put in special pleas, which were also refused. D. and E. then filed disclaimers. The jury were sworn as between the plaintiff and A., B., C., and F., and a verdict was given for the plaintiff: after which the Court ordered judgment to be entered against A., as administrator, for the amount of the verdict. *Held,* 1st. That it was error to reject the pleas offered by F. and the other terre-tenants. 2d. That the jury ought to have been sworn as against all the parties who appeared, notwithstanding the disclaimer of two. 3d. That judgment ought to have been entered against A. by default in the first instance ; and that it was error to give judgment against him on the verdict.

THIS was a writ of error to the Court of Common Pleas of Montgomery County.

Upon the return of the record, it appeared that John Williams brought a writ of *alias scire facias* to November Term, 1834, of that Court, against George S. Roberts, administrator of the goods, &c., of Richard Roberts, deceased, and the terre-tenants, upon a certain mortgage, given by Richard Roberts to John Williams, of certain messuages, lots and lands, situate in Upper Merion township, Montgomery county.

The sheriff returned " *Nihil,* as to George S. Roberts, and made known to John Freedley, James Wells, Thomas Lowry, and James Steel, terre-tenants."

(Roberts *v.* Williams.)

The record stated that "the defendants" pleaded payment, with leave, &c.; to which the plaintiff replied *non solvit;* and issues were joined.

On the 25th of August, 1837, the petition of Jacob Freedley was presented, setting forth that the title to the real estate mentioned in the *scire facias* is now in the petitioner, and was so at the time of the issuing of said writ. He therefore prayed the Court to admit him to come into Court, and take defence in this suit, and to plead in the same manner as if the original *scire facias* had been served upon him. Whereupon the Court granted a rule upon the plaintiff to show cause why the petitioner should not take defence, agreeably to the petition; which rule was afterwards made absolute by consent.

On the 30th of May, 1838, the cause was called up for trial— Jacob Freedley, who was admitted to plead *pro interesse suo,* tendered the following plea; which was objected to by the plaintiff's counsel, and overruled by the Court.

"And now, to wit, May 30th, 1838. The said Jacob Freedley, by leave of Court, here comes and defends, &c., and pleads payment with leave, &c.

And for further plea in this behalf the said Jacob Freedley, by leave of the Court here for this purpose first had and obtained, according to the form of the statute in such cases made and provided, says, that the said plaintiff ought not to have execution of the said debt to be levied of the lands in the said plaintiff's writ mentioned, whereof the said Jacob Freedley is owner and terre-tenant, because he says that after the making of the indenture in the said plaintiff's writ mentioned, to wit, on the 21st day of January, A. D. one thousand eight hundred and nineteen, Joseph Lukens and John Iredell, executors of the last will and testament of Joseph Williams, deceased, went into the Court of Common Pleas of Montgomery County, and then and there, agreeably to the act of assembly in such case provided, entered a judgment against the said Richard Roberts, for the sum of five thousand seven hundred and sixty dollars, conditioned for the payment of two thousand six hundred and eighty dollars on a bond, dated the 22d of November, A. D. 1818, and payable the first day of April, A. D. 1819, with interest; as by the record of the said judgment remaining in the said Court, fully appears. And the said Jacob further avers that afterwards, to wit, at the term of August, A. D. 1819 of the said Court, the said judgment being wholly unsatisfied, the said Joseph Lukens and John Iredell prayed, and had of the said Court the award of a certain writ of *fieri facias* upon the said judgment, which said writ was directed to the sheriff of the said county, and was made returnable to the term of November of the said Court, in the year last aforesaid; and the said Jacob further avers that the said Joseph Lukens and John

(Roberts v. Williams.)

Iredell, for want of sufficient personal assets of the said Richard Roberts, whereof the said moneys of the said judgment could be made and levied, did then and there direct the said sheriff to levy and execute the said writ upon the said lands and tenements in the said plaintiff's writ now mentioned, and in pursuance of the said directions the said sheriff did by virtue of the said writ seize and take in execution the said lands and tenements, and afterwards, to wit, at the return of the said writ, made return of the said levy to the said Court; as by the record of the said writ and return remaining in the said Court, more fully and at large appears. And the said Jacob further avers, that afterwards, to wit, at the said term of November of the said Court, the said Joseph Lukens and John Iredell, executors as aforesaid, prayed the said Court to award upon the said judgment a certain writ of *venditioni exponas*, which was accordingly awarded, by which writ the said sheriff was commanded to expose the lands and tenements to sale, and sell the same, and make his return thereof at the next term of the said Court; as by the said writ more fully and at large appears; at which last term of the said Court, to wit, on the 19th day of February, A. D. 1820, the said sheriff made return of the said writ, that he had sold the said lands to Thomas Lowry, for the sum of twelve thousand nine hundred dollars, which moneys he had ready before the judges in said writ named, as by the said writ he was commanded; which by the said writ and return in the said Court remaining fully appears : and therefore the said sheriff did seal and deliver to the said Thomas Lowry, his certain deed-poll of bargain and sale, conveying the said lands and tenements to him the said Thomas and his heirs forever, in consideration of said sum of twelve thousand nine hundred dollars, and in open Court did acknowledge the said deed poll; as by the record thereof remaining in said Court appears : by means whereof the title, interest and estate of the said Richard Roberts in the said lands and tenements became vested in the said Thomas Lowry, clear and free from the lien of the said indenture of mortgage in the said plaintiff's writ mentioned; and the said Jacob further avers, that the said messuage, grist-mill and tract of land, with the appurtenances in the said writ of *scire facias* mentioned, have since the sale by the sheriff as aforesaid made, and before the issuing of the *scire facias* in this suit, by virtue of divers good conveyances and assurances in the law duly had, upon good and valid considerations, become vested, and are now vested in the said Jacob, clear, free and discharged from the lien of the said indenture of mortgage recited in the plaintiff's writ of *scire facias*—all of which he is ready to verify—Wherefore he prays judgment if the said plaintiff ought to have execution of the said premises, to satisfy his said debt and interest as he has demanded.

And for further plea in this behalf, the said Jacob Freedley, by leave of the Court here for this purpose first had and obtained,

according to the form of the statute in such case made and provided, says, that the said plaintiff ought not to have execution of and for the debt and interest aforesaid to be levied of the lands and tenements in the said writ of *scire facias* mentioned, and whereof the said Jacob is terre-tenant, because he says that the said Richard Roberts in the said writ of *scire facias* named, nor any other person in right of the said Richard, or to the use of his estate, at the time of issuing the said *scire facias,* or ever after, had nothing in the said premises, or in any part or parcel thereof which might be charged or bound by reason of the said indenture of mortgage, either in law or equity, but that the lien of the said mortgage was at that time and is now entirely discharged and divested, and that the said premises are in no way chargeable with the same; and this he is ready to verify: wherefore he prays judgment if the said plaintiff ought to have execution of the said debt and interest, to be levied of the lands and tenements whereof he the said Jacob is terre-tenant, &c."

James Steel, T. Lowry, and J. Wells, terre-tenants, likewise asked leave to plead special pleas of similar tenor, which was objected to; and these pleas were likewise overruled and rejected.

Thomas Lowry and James Wells then filed disclaimers, as follows:

" Thomas Lowry, who was served by the sheriff with the *alias scire facias* in this case, being duly affirmed, saith, that he hath no interest in the land and premises described in the mortgage recited in the above writ of *scire facias,* nor had he any at the time of the issuing of said *scire facias;* and he further saith, that he never employed counsel to appear for him, nor authorised any person to appear for him, or to employ counsel for him for that purpose, or to enter any plea or pleas, or to take any defence in the case; and further, that he had no knowledge that any one had appeared for him, or entered any plea in his behalf until this day; and further, he, the said Thomas Lowry, does hereby disclaim all pleas entered in his behalf, and all defence for him in this case."

On the same day, a jury being called at the request of the plaintiff, were sworn or affirmed to try the issue joined between John Williams, plaintiff, and George S. Roberts, administrator, &c., of Richard Roberts, deceased, and Jacob Freedley, John Freedley, and James Steele, terre-tenants, defendants. Whereupon Jacob Freedley, by his attorney, again asked permission to file his special plea, as above; which was again overruled by the Court.

The jury being sworn, the plaintiff's counsel gave in evidence the mortgage recited in the *alias scire facias;* which was dated March 24th, 1810, and recorded the 28th of January, 1817, with the bond accompanying it.

(Roberts *v.* Williams.)

The defendant's counsel then read in evidence the record of a judgment entered on the 21st of January, 1819, in the Common Pleas of Montgomery County, of the term of November, 1818, at the suit of Joseph Lukens and John Iredell, executors of the last will and testament of Joseph Williams, deceased, against Richard Roberts, upon a bond in the penalty of five thousand seven hundred and sixty dollars, with condition for the payment of two thousand six hundred and eighty dollars, on the 1st of April, 1817. From this record it appeared that a *fieri facias* issued upon the judgment to November Term, 1819, upon which the following return was endorsed.

" Levied upon two messuages, grist-mill, marble saw-mill, and twenty-six acres of land, in Upper Merion township, Montgomery county, adjoining lands of Thomas Lowry and others, seized and taken in execution as the property of Richard Roberts, being the same premises contained in the mortgage of the plaintiff."

A writ of *venditioni exponas* issued to February Term, 1820, which was returned as follows :

" Lands sold to Thomas Lowry for the sum of twelve thousand nine hundred dollars, which moneys I have ready before the judges within-named, as within I am commanded."

The defendant's counsel then proposed to read the original docket entry of the sheriff's deed, for the same premises, made in pursuance of the said sale ; which docket entry is as follows :

" Joseph Lukens and John Iredell, executors of the last will and testament of Joseph Williams, deceased, *v.* Richard Roberts.

*Fieri facias* to November, 1819. *Venditioni exponas* to February, 1820 : and now, to wit, February 19th, 1820, Philip Sellers, Esquire, high sheriff of the county of Montgomery, acknowledges in open Court a deed-poll conveying unto Thomas Lowry and to his heirs and assigns, all the estate, right, title and interest of Richard Roberts, of, in and to, two messuages, grist-mill, marble saw-mill and tract or piece of land, situate in Upper Merion *township*, adjoining lands of the late Lindsay Coates, deceased, John Jones, Thomas Lowry and others, containing twenty-four acres, three quarters and one perch of land, more or less ; also of, in and to eight undivided tenth parts of a lot of ground situate in the township aforesaid, adjoining lands of John Jones and others, containing one acre and ninety-three perches, be the same more or less ; to have and to hold the said two messuages, grist-mill, marble saw-mill and tracts of land, with the appurtenances, unto the said Thomas Lowry, his heirs and assigns, to the only proper use and behoof of the said Thomas Lowry, his heirs and assigns forever."

" Land sold to Thomas Lowry, for the sum of twelve thousand nine hundred dollars."

(Roberts *v.* Williams.)

This was objected to by the plaintiff's counsel, and was overruled by the Court; and forms the subject of the first bill of exceptions.

The defendant's counsel further gave in evidence the record of a judgment, Dianah Willet *v.* Thomas Lowry, administrator, &c., of Mordecai Willet, deceased, with the docket entries in this suit of *fieri facias* to August Term, 1832, No. 22, *venditioni exponas* to November Term, 1832, No. 3, *alias venditioni exponas* to January Term, 1833, No. 6, *pluries venditioni exponas* to April Term, 1833, No. 1.

The plaintiff then further to maintain the issue on his part, called Thomas Lowry as a witness, and offered to prove by him a parol agreement made at the time of sale with John Williams, the mortgagee, respecting the mortgage.

Which evidence being objected to by the counsel for the defendants, was admitted by the Court, and a second exception taken.

The witness testified as follows: " I think it was on new year's day, in the year 1820, I went to the sale of Richard Roberts's property, and I purchased it for twelve thousand nine hundred dollars; but before I did purchase it, I went to John J. Williams and told him I had no money, and that my friends advised me to purchase the property if it went at an under value. The sale had commenced before this, and the property was then up, but I had not made a bid. He told me, provided it will be any advantage to thee, as I know thee has been treated badly, the mortgage may remain as it is, provided I would pay him the back interest, and pay him the interest that would accrue every year. On these conditions I bid and became the purchaser. When the property was struck off to me, I forget whether I paid the sheriff any money or gave my note. It was sold under Joseph Williams's judgment. I think I paid eleven hundred and eighty odd dollars, and there was some little altercation between the sheriff and me about the costs. He wanted to charge costs on the twelve thousand nine hundred dollars."

The plaintiff's counsel then propounded to the witness the following question, viz., " What did you say to the sheriff when you paid the eleven hundred dollars?"

Which question was objected to by the defendant's counsel and admitted by the Court; and a third exception taken.

The witness in continuation said, " I told him that there was an express agreement between John Williams and myself, that the lien should remain as it was, and that I should pay him the interest on it. Not a cent of the mortgage money was paid to the sheriff. The interest of the mortgage I paid, I think, to 1829. I have paid none since. Philip Sellers was the sheriff. He is dead."

(Roberts *v.* Williams.)

The defendant's counsel then proposed certain points on which they requested the court to charge the jury, as follows:

" 1st. That the sale by the sheriff in 1820 of the mortgaged premises, made and returned as set forth in the record thereof, discharged the lien of the mortgage by operation of law, notwithstanding the evidence of Thomas Lowry, relative to an agreement with Williams touching the same."

Answer by the Court: " This proposition is not correct."

" 2nd. If the Court should answer the above in the negative, then they are requested to charge, that if the sheriff was not privy to, and assenting to said agreement at or before the time of the sale, then the said premises were not sold subject to said mortgage."

Answer by the Court: " This proposition is not correct."

" 3d. That if the sheriff did not give notice at the sale that he sold subject to the mortgage, then the sale is to be considered as one free from the incumbrance thereof."

Answer by the Court: " This proposition is not correct."

" 4th. If the jury believe that the sale was made under an agreement between Williams and Lowry, that the mortgage should remain notwithstanding the sale, such agreement was unlawful, and could not keep alive the liability of Richard Roberts to pay the debt for which his bond and mortgage was given."

Answer by the Court: " The question as to Richard Roberts's liability does not arise in this case."

" 5th. If by the said sheriff's sale the mortgage debt was paid so far as it regards Richard Roberts, then the said suit against his personal representative cannot be supported, and the plea of payment is made out. If it was a good payment as to him, it was a good payment as to the terre-tenants who take defence in the present suit, and on this trial."

Answer by the Court: " The first part of this proposition is answered by the answer to the fourth proposition; and the latter part will be answered by the answer to the 9th."

" 6th. That the agreement between Lowry and Williams, not specifying the manner in which the lien of the mortgage should remain, is to be considered as agreed to be carried into effect according to law, which could only be done effectually by Lowry giving a new mortgage. He not having done so, the agreement was a mere personal contract between them, which did not affect the land, and cannot now affect the terre-tenants."

Answer by the Court. " This proposition is not correct."

" 7th. That the said Lowry by his disclaimer, stands before the jury divested of all right or interest in the premises; the said agree-

(Roberts v. Williams.)

ment of said Lowry with Williams cannot therefore affect any purchaser from him, or person deriving title under him, unless notice of such agreement be traced to such purchaser; and that such notice is not to be presumed from the record of the mortgage, or from any other fact proved in this cause."

Answer by the Court. " This proposition is not correct."

"8th. That the admission of Jacob Freedley as a party to the *scire facias* on his petition, is a ground for the jury to presume that he has such an interest in the premises as warrants his admission as a party, and that interest is his ownership of the fee therein : such interest therefore, cannot be affected by the said agreement between Lowry and Williams, unless notice be brought home to him; the verdict must therefore be in his favour."

Answer by the Court. " The admission of Jacob Freedley, as the record shows it ; does not authorise the jury to presume any thing. The effect of the record is a question of law for the Court. The rest of this proposition is answered in the ninth."

"9th. That upon the issues joined, and the evidence in the cause, the jury cannot find a verdict against Jacob Freedley, in any event."

Answer by the Court. " This proposition is not correct. The agreement between Williams and Lowry, as detailed by Lowry, is binding upon them, if Lowry is believed. No person except Richard Roberts, (and as to him I do not think it necessary now to decide,) or *bona fide* purchasers under Lowry for a valuable consideration, without notice, can say aught against that agreement. None of the persons, Jacob Freedley included, now returned as claiming to be terre-tenants, have shown that they are entitled to be considered as such *bona fide* purchasers, and therefore neither they, nor any of them, are entitled to a verdict."

The counsel for the defendant excepted to the charge of the Court, and the jury having found for the plaintiff, the Court ordered judgment to be entered against the defendant Roberts, for the amount ascertained by the verdict against the terre-tenants. A writ of error was then taken, and the following specifications filed.

" 1st. The Court erred in overruling and rejecting the pleas of Jacob Freedley.

2d. The Court erred in overruling and rejecting the special pleas of the other terre-tenants.

3d. The jury were sworn or affirmed to try the issues joined between John Williams, plaintiff, and George S. Roberts, administrator, &c. of Richard Roberts, deceased, and Jacob Freedley, John Freedley and James Steel, terre-tenants, defendants, which was erroneous.

Vol. v.—23

4th. The Court erred in overruling the evidence mentioned in the first bill of exceptions.

5th. The Court erred in admitting the evidence mentioned in the second bill of exceptions.

6th. The Court erred in admitting the evidence mentioned in the third bill of exceptions.

7th. The Court erred in refusing to charge the jury on the several points, as requested by the counsel for the terre-tenants.

8th. There is error in the answer of the Court to each of the several points on which they were requested by the counsel for the terre-tenants to charge the jury.

9th. The judgment or judgments entered in the suit are erroneous, both as to George S. Roberts, administrator, &c., who was not in Court, and as to the terre-tenants."

Mr. *Broom,* for the plaintiff in error.

Williams, the plaintiff below, sued out a *scire facias* against Roberts, the administrator of the mortgagor, and terre-tenants. The premises were sold February, 7, 1820, under a younger judgment, by the sheriff to Thomas Lowry, for twelve thousand nine hundred dollars, enough to discharge both mortgage and judgment; and the sheriff returned, that he had the money ready, as commanded; and a deed was made and acknowledged in open Court, the 19th of February, 1820, by the sheriff to Lowry, accordingly. The plaintiff proved an agreement with Lowry before the sale, that if the latter should buy, he should pay the interest due and to accrue, and that the mortgage should remain. This was unknown to any one at the sale, except Williams and Lowry. The terre-tenant, Jacob Freedley, was allowed to take defence on his petition, by the consent of the plaintiff below, but not having pleaded, offered to file his pleas before and after the jury were sworn, but the Court rejected them. George S. Roberts, administrator of the mortgagor, had never appeared or pleaded; nevertheless the jury were sworn to try the issues between Williams, and Roberts and Freedley, as well as the other defendants named. Wells and Lowry, two of the terre-tenants, filed disclaimers, and the jury were not sworn as to them. After the verdict, a judgment on the return of two *nihils,* was entered against Roberts, for the amount of the verdict. Freedley's pleas were important to his defence, as they offered to put in issue the sheriff's deed to Lowry, and averred that Freedley was a purchaser for a valuable consideration.—At common law, Freedley had a right to plead before the jury were sworn, the same matter which the act of assembly allowed afterwards; and the construction of the act has uniformly been to allow any amendment in form or substance, affecting the merits of the cause. *Coxe* v. *Tilghman,* (1 *Wharton,*

(Roberts v. Williams.)

290,) and the authorities cited. Chief Justice TILGHMAN says, " All that it is necessary to inquire, is, whether the merits of the defendants' cause were not affected by the rejection of their plea; and most assuredly they were, for without that plea the Court and jury could have no notice of the facts on which the defendant relied for defence. It is the very case for which the act of assembly meant to provide." *Sharp* v. *Sharp*, (13 *Serg. & Rawle*, 445.) This opinion seems to have been framed for our case, because the Court charged the jury in answer to the ninth proposition, that Freedley has not shown that he is entitled to be considered as a *bona fide* purchaser, and therefore not entitled to a verdict. Thus the pleas offered to put these facts in issue, became most material. The alteration is matter of right, and it is error to refuse it. 13 *Serg. & Rawle*, 445.—It is no answer that we might have taken defence under payment with leave; we had a right to a replication to our pleas, denying facts, alleging new matter, or demurring to their sufficiency in law; defence on payment with leave is not available, as we had given no notice of special matter, and would have been entrapped by it. The judgment was erroneous, because issues were not joined between the parties; *Brown* v. *Barnett*, (2 *Binn.* 33;) in which judgment was reversed because there was no replication to " payment with leave," nor the common clerical memorandum, " and issue," TILGHMAN, C. J. saying, he was sorry to reverse after trial on the merits, but was obliged to do so by the necessity of adhering to principle. In ejectment against two, one appeared and pleaded to issue, the other disclaimed, and objected to the jury's being sworn as to him; and the jury found against the former and in favour of the latter; this was held erroneous as to both; ROGERS, J. saying, after trial on merits, the Court will not reverse, "because no plea or issue; for the omission to perfect pleading, is a tacit agreement to waive form and try on merits." *Sauerman* v. *Weckerly*, (17 *Serg. & Rawle*, 116.) But it was never supposed that a party can be compelled to try, until his case be put in legal form by issue. Where objection is made, there can be no presumption of tacit agreement. *Bratton* v. *Mitchell*, (5 *Watts*, 69.)—The judgment is erroneous, because all the proper parties were not before the Court. Lowry and Wells were warned, appeared and pleaded; and at the trial offered additional pleas like Freedley's, which were in like manner rejected; they then disclaimed, and the jury were sworn as to the others. The Court had not the power to drop any of the parties as in *Bratton* v. *Mitchell*, where Bratton disclaimed without having pleaded, and had a verdict for him. Wells and Lowry pleaded and disclaimed. If this amounted to a withdrawal of the plea, then judgment should have been entered against them by default; but if issue remained, there should have been a verdict as to them. *Maris* v. *Maris*, (5 *Watts*, 321.) George S. Roberts, administrator of the mortgagor, was an essential party, and the jury were sworn to try the issue with him;

(Roberts v. Williams.)

but he had neither appeared nor pleaded. The estate he represented was interested, and the terre-tenants had a right to avail themselves of his defence. Judgment could have been entered against him on two *nihils*, but it should have been entered so, as the terre-tenants could not be liable for more than was recovered of the mortgagor. *Reigart* v. *Ellmaker;* (6 *Serg. & Rawle*, 44.) This suit was against the recognizor , and the terre-tenants, and it was error to proceed against the latter without the adm'r of the recognizor.— It is error to swear a jury, where the administrator of the recognizor is included, who had been defaulted. (7 *Serg. & Rawle*, 4, 9.) The judgment afterwards entered against George S. Roberts for the amount of the verdict, was a nullity. The judgment could not be on a verdict to which he was no party, but must be entered, as usual, by default. It is error to swear a jury between parties not before the Court. *Hess* v. *Hess*, (2 *Rawle*, 67.)

It was error to reject the entry of the sheriff's deed. It is decided to be a sufficient recording within the recording act, and good evidence of title in case the deed is lost, or not in the reach of the party. *Naglee* v. *Albright*, (4 *Wharton*, 291.) *Lodge* v. *Berrien*, (16 *Serg. & Rawle*, 297.) In our case it was part of the record of the suit, of which the other part was already in evidence, and necessary to show the sale to have been completed. Its effect, as evidence of title, was another matter. If we did not follow it up with some account of the deed, the Court might have said it was not evidence of title, but sufficient to show that the land was turned into money and the mortgage discharged, and a good record evidencing that fact to all subsequent purchasers, as in *Stoever* v. *Rice*, (3 *Wharton*, 21.)

The charge is erroneous., The part of the charge returned upon *certiorari* never was filed, nor required to be filed below, and is not to be considered by this Court. *Bratton* v. *Mitchell*. The Court is not bound to file the whole charge, but only such parts as may be required. *Reigart* v. *Ellmaker*, (14 *Serg. & Rawle*, 121.) And the opinion can only be lawfully filed at the trial, and at the request of the party. *Lancaster* v. *Denormandie*, (1 *Wharton*, 49.)—We were entitled to clear answers ; such as would give to the jury a knowledge of the law pertinent to the issue. *Geiger* v. *Welsh*, (1 *Rawle*, 349.) *Slaymaker* v. *St. John*, (5 *Watts*, 31.) *Fisher* v. *Larrick*, (3 *Serg. & Rawle*, 319.) We must take the written answers to the defendant's points, as the only charge we have.—Answer first, is a general denial; nevertheless the sale did discharge the lien, *non obstante* the agreement proved by Lowry between him and Williams. This agreement was kept secret until after the sale, when it was communicated to the sheriff, and therefore the sale had its legal effect, and the Court should have told the jury what that was.— Answers second and third, are general denials ; yet if the sheriff did not give notice at the sale, that he sold subject to the mortgage, the

(Roberts v. Williams.)

premises were not sold subject to it; and any other purchaser would have bought clear of the mortgage; and the sheriff would have become liable for the mortgage debt, instead of the land.—Answer fourth is, that Roberts's liability did not arise in the case. Now this was the very matter tried between the plaintiff and Roberts, before the jury, and the land was not liable for more in the hands of the terre-tenants, than Roberts was liable for.—Answer fifth refers to the fourth and ninth points.—Answer sixth is a general denial; yet there was no effectual way to carry the agreement of Lowry into effect, according to law, but by a new mortgage; and his agreement whatever it might be, was a personal contract only, and could not affect the land.—Answer seventh, is a general denial; yet the judge says in his answer to the ninth, that a *bona fide* purchaser without notice, may gainsay the agreement. He should have answered to the seventh, that notice was necessary to affect him, and that it was not to be presumed from any thing that appeared, as no evidence to that effect had been offered.—Answer eighth refers to ninth.—Answer ninth, involves the lien of the mortgage, for if that be gone, the plaintiff could not recover against the terre-tenants, and takes away the question, whether Jacob Freedley was a *bona fide* purchaser, from the jury. He had come in as terre-tenant, and therefore a purchaser by leave of the Court, and consent of the opposite party; and it was error to take away that fact from the jury, as the judge did by his assertion that he was not such a purchaser. *Long* v. *Ramsey*, (1 *Serg. & Rawle*, 72.) It is plain we wanted the judge to tell the jury, that by law a sale under a younger judgment discharged the lien of a prior mortgage, but could get no answer touching that point. The jury were told, in effect, that such a question did not arise, as we were bound by the agreement of Lowry; but if the law were so, the only matter to be considered, would have been the effect of the agreement of Lowry in controlling the legal operation of the sale. The sale did discharge the lien of the mortgage. *Willard* v. *Norris*, (2 *Rawle*, 56;) which was adhered to by the Court, after the most able arguments, in *Presbyterion Congregation* v. *Wallace*, and recognized after the act of assembly, in *Stoever* v. *Rice*, (3 *Wharton*, 21;) where the Court say, that the land is by the sale, although the deed was not made by the sheriff, converted into money, and in *gremio legis*.—The plaintiff having failed to make out his case, by showing a subsisting mortgage, the verdict should have been for the defendants.

Mr. *Potts* and Mr. *Mallery*, for the defendant in error, contended, that as to the three first errors assigned, no exception had been taken to the decision of the Court below, and they could not now be assigned for error. That the special pleas offered, contained nothing but what could be given in evidence under the plea of payment with notice of special matter. That under the plea of payment with

notice, the party may give evidence of any thing, which would show that in equity and good conscience the plaintiff was not entitled to recover. *Hawk* v. *Geddis*, (16 *Serg. & Rawle*, 444.) By rejecting the special plea, the defendants were not prejudiced; and when the merits of the defendant's cause have not been affected by the rejection of the plea, he cannot complain. *Sharp* v. *Sharp*, (13 *Serg. & Rawle*, 444.) *Wilson* v. *Irvine*, (14 *Serg. & Rawle*, 176.) And upon the trial of this cause, no evidence was excluded by reason of the pleadings. The defendants had the benefit of all legal evidence offered by them. The jury were intended to be sworn, and were sworn, upon the issue joined upon the record; and between the parties to that issue, although the names of other parties were upon the docket, who had not appeared and pleaded. The parties who had not pleaded were not injured; and for an inadvertency in swearing the jury, even as appears upon this record, the Court will not reverse. *Hills* v. *Elliot*, (16 *Serg. & Rawle*, 56.) There was a plea upon the record, and the cause was at issue; and when Jacob Freedley came in and became a co-defendant, he adopted the plea then upon the record; under which all the defence offered by him could have been made, and in fact was made; and after a trial upon the merits without exception it is not a cause for reversing the judgment. *Sauerman* v. *Weckerly*, (17 *Serg. & Rawle*, 116.) As to the disclaimer of Lowry and Wells, and their names being omitted in the swearing of the jury, neither objection nor exception was taken at the time of trial; and in the case cited from 5 *Watts*, 69, *Bratton* v. *Mitchell*, objection to proceed to trial was made, and an exception taken to the decision of the Court; and in that case it is held, that without exception taken at the time of trial, the party cannot assign the same for error. Upon the scire facias upon the mortgage, the land alone is liable for either debt or costs; there is no personal liability nor any fund liable, except the land; while in the cases of *Reigart* v. *Ellmaker*, (6 *Serg. & Rawle*, 44,) and *Kean* v. *Ellmaker*, (7 *Serg. & Rawle*, 1,) there was a *personal* liability; the suit was upon a recognizance in the Orphans' Court.

The first exception is to the rejection of the docket entry of the acknowledgment of the sheriff's deed. Without accounting for the non-production of the deed, and without any proof of its loss, there was no error in rejecting the evidence. The docket entry of the acknowledgment of the sheriff's deed is secondary evidence, and can only be admitted to supply the loss of the deed. *Lodge* v. *Berrien*, (16 *Serg. & Rawle*, 297.) *Luce* v. *Snively*, (4 *Watts*, 396.) *Robins* v. *Bellas*, (2 *Watts*, 359.)

The second and third bills of exceptions, are to the matter offered to be proved by Thomas Lowry: there was neither objection nor exception to the witness. This testimony was to establish an express agreement between the purchaser at sheriff's sale, and the mortgagee, that the mortgage should remain a lien, unaffected by the

sale under the younger judgment, and that he should take and hold the land so sold under the younger judgment, subject to the lien of the mortgage; and that he did so take it, and hold the same, and for several years paid the interest upon it.    This was clearly legal testimony.    That such an agreement continued the lien, and prevented the extinguishment of the lien of the mortgage, was decided in *Stackpole* v. *Glassford*, (16 *Serg. & Rawle*, 163.)  *Schultze* v. *Diehl*, (2 *Penna. Rep.* 277.)    *Twelves* v. *Williams*, (3 *Wharton*, 485.)    To exclude such evidence would be to assist one person to violate his contract, and commit a fraud upon the other party.    In the present case, not one of the defendants showed that he claimed the land, or any part of it, by a conveyance subsequent to the mortgage, or had an estate that was ever bound by it; and neither of them could be regarded as terre-tenants.    *Chahoon* v. *Hollenback*, (16 *Serg. & Rawle*, 425.)    *Catlin* v. *Robinson*, (2 *Watts*, 373.)    There was no error in the charge of the Court; every question that could arise from the facts in the cause was fully and correctly answered.    If there is any difficulty upon that subject, it arises from the whole charge not having been sent up, in which the whole case was fully explained; and the plaintiff in error by bringing before this Court only the short answers to the points presented to the Court to charge upon, should not obtain any advantage.    The opinion of the Court was clearly expressed that the sale on the judgment would *not* extinguish the lien of the mortgage, notwithstanding the testimony of Thomas Lowry; and that opinion is in accordance with the cases heretofore cited.—And the question whether the sheriff was privy to the agreement, or gave notice thereof at the sale was not material, for none of the defendants could be affected thereby.    Nor could the question as to the liability of Richard Roberts arise in a proceeding upon the mortgage, in which the only judgment that could be rendered would be that the land be levied and sold; and the mortgaged premises might be liable to sale, although Richard Roberts might not be personally liable.    That fund might be liable alone for the payment of the mortgage debt.    The other questions presented to the Court, were designed to obtain from the Court a charge adapted to an entirely different state of facts; taking for granted what had not been attempted to be proved, that Jacob Freedley and the other defendants were terre-tenants and had an interest in the land which entitled them to be regarded as such; when in fact they had no interest as the case stands: having been found on the land, they had been returned by the act of the sheriff, except Jacob Freedley who came in and alleged that he was a terre-tenant, but gave no evidence to establish the fact.    It is contended that the mere act of the sheriff, by the service of the *scire facias* upon a person who never had any interest in the land, cannot give him the character of a terre-tenant, and place him in the situation

(Roberts *v.* Williams.)

of a *bona fide* purchaser, and require of the Court to regard him as such in stating the law to the jury.

Mr. *Tilghman*, in reply.

1. The rejection of the plea of Jacob Freedley is. manifest error. The act of 1806, is distinct and imperative. The plea went to the merits. It follows that as to him, 1st, no issue was joined. 2nd. No. evidence was given. 3rd. No jury was sworn. 4th. The judgment against him was erroneous. Where there has been a trial on the merits and the record is silent, an *issue* will be presumed as in *Sauerman* v. *Weckerly*. Here there is no room for any presumption. *Bratton* v. *Mitchell*, (5 *Watts*, 70). Jacob Freedley never adopted the plea of payment. He had a right to sever in pleading.

2. It was no *less* error to swear the jury as to Roberts the admin-istrator. He was never in Court, never had counsel, never appeared and never pleaded. He had an interest because he would be perso-nally bound in the bonds for which the mortgage was given, and had a right to contend that the sheriff's sale discharged the mort-gage. Lowry and Wells continued parties notwithstanding the disclaimer. There was no judgment against them and no discon-tinuance as to them.

3. The conversations between third persons, strangers to the real defendant here, ought not to have been admitted, until it was first shown that he was cognizant of them. These declarations formed no part of the conditions or terms of sale. *Scott* v. *Green-ough*, (7 *Serg. & Rawle*, 197.) Besides Lowry was clearly inter-ested and ought not to have been admitted a witness.

4. If *Willard* v. *Harris* and the *Corporation* v. *Wallace*, are law, the answers of the Court below are not. The question is not whether Williams has a good claim against Lowry under his agreement; but whether after the judicial sale, a *scire facias* on the mortgage can be supported against Roberts and Freedley. *Stoever* v. *Rice*, (3 *Wharton*, 21.) The mortgage was in law extinguished. *Qua* mort-gage it is gone. The true rule is found in *Shultz* v. *Diehl*, (2 *Penn. Rep.* 277,) and *Ficker* v. *Ersick*, (2 *Rawle*, 166.) The great error of the Court below is, that they considered the judicial sale as a nullity, and even held the terre-tenants in possession under it, bound to prove a negative, viz. that they had no notice.

The opinion of the Court was delivered by

Rogers, J.—It sometimes happens, in our mixed jurisprudence of law and equity, that we are greatly embarrassed in affording that equitable relief to which a party may be justly entitled. The plain-tiff's case would be one of equitable cognizance; but for want of a Court of chancery, we are obliged to mould our common law forms to reach the substantial justice of the case. Richard Roberts mort-

gaged the land which is now in controversy to the plaintiff, John Williams. The executors of Joseph Williams obtained a judgment against Richard Roberts, in his lifetime, conditioned for the payment of two thousand six hundred and eighty dollars. To a writ of *venditioni*, which was issued on this judgment, the sheriff returned, " land sold to Thomas Lowry, for the sum of twelve thousand nine hundred dollars, which money I have ready, before the judges within-named, as within I am commanded." The mortgage is prior in date to the judgment, and consequently, according to the case of *Willard* v. *Norris*, (2 *Rawle*, 56,) and *The Corporation* v. *Wallace*, (3 *Rawle*, 109,) the purchaser at the sheriff's sale takes the land, discharged of the lien of the mortgage. The money in the hand of of the sheriff is substituted for the land; and the remedy by the mortgagee on this return, is against the sheriff. As respects the mortgagee, or his personal representatives, the money received by the sale being more than sufficient to discharge the amount due, the mortgagee can be compelled to enter satisfaction; for it would be unjust that the debtor should be deprived of his land, by a judicial sale, and at the same time remain liable for the debt. This is so obvious, as not to admit of question; but it is alleged by the plaintiff, that there was an agreement between him and the vendee, that the lien of the mortgage should remain, notwithstanding the sale. The agreement was made for the convenience of the purchaser, who was unable, at that time, to pay the purchase-money; and as between these parties, such a contract would raise an equity. A Court of chancery would compel the purchaser to execute a mortgage, or would consider the agreement in the nature of an equitable mortgage, or would decree him to be a trustee for the mortgagee, until the debt was paid. A refusal on the part of the purchaser to perform the contract, would be a fraud,—a principal ground of equitable jurisdiction, and against which a chancellor would grant relief by a special decree. Thus the case would stand between the original parties, but as against the representative of the mortgagor, there is no equity whatever. On the contrary, as he was no party to the agreement, he has a right to complain that the mortgage has been kept on foot by a secret agreement, to his manifest injury. By the sale the debt is paid, and in a suit on the bond on proof of the facts the administrator would be entitled to a verdict. This is not like the case of a sale subject to the mortgage, as in *Stackpole* v. *Glassford*, (16 *Serg. & Rawle*, 166.) It is not disputed, that all the purchaser would have to pay for the property, was the amount of his bid. The agreement was made to supersede the necessity of paying the money to the sheriff—an agreement which the mortgagee had the right to make, but by which he exonerated the sheriff from liability for the money raised by the sale, and at once discharged the lien of the mortgage. And whether the sheriff was privy to, or assented to the agreement, or not, can make no difference, as the

(Roberts *v.* Williams.)

question may affect the plaintiff and the vendee of the sheriff. It is also equally clear, that a *bona fide* purchaser for a valuable consideration, stands in a different position from the original purchaser. A subsequent purchaser takes the land, discharged from the equity, unless the plaintiff brings some notice to him of the agreement. Thus it will be seen, that to affect mortgaged premises in the hands of a third person with this secret equity, it will be necessary, not only to prove the contract, but in addition, that the terre-tenant had notice of the agreement.

This was a *scire facias* on the mortgage. The suit is brought against the administrator and terre-tenants. The sheriff returns ' *nihil*,' as to George S. Roberts, and 'made known,' to John Freedley, James Freedley, James Wells, Thomas Lowry, and James Steel, terre-tenants. The terre-tenants who were summoned pleaded payment with leave; and as to them issue was regularly joined. Afterwards Jacob Freedley was permitted by the Court to come in and take defence in the suit, and to plead in the same manner as if the original *scire facias* was served on him. Freedley then offered a special plea, which was overruled by the Court; but for what reason, has not been clearly explained. If the plea was defective in form or substance, it was open to the plaintiff to demur; and if taken by surprise, the Court, on motion, would have continued the cause. He had a right of which he could not be deprived, to bring his case before the Court, either in the form of a special plea, or to take defence under the plea of payment. So far, then, as respects this defendant, the cause was not at issue; for it is idle to say that he adopted the pleas of the other defendants. The case of *Britton* v. *Mitchell*, (5 *Watts*, 69,) is full to the point. A party cannot be compelled to try until the cause is put into legal form, by an issue properly found, between all the parties on the record.

The *scire facias* is brought against the administrator and terre-tenants; and it would be error to try the suit in a different manner. Where a *scire facias* was brought upon a recognisance in the Orphans' Court against the cognizor and terre-tenants, and the cognizor died before judgment, it was held, in *Reigart* v. *Ellmaker*, (6 *Serg. & Rawle*, 44,) and *Keen* v. *Same*, (8 *Serg. & Rawle*, 4,) to be error to proceed to trial against the terre-tenant alone, where the administrator, upon being duly served with a *scire facias*, has neglected to come in and be made a party to the record. The proper course is, when the personal representative does not appear and take defence, to sign judgment by default, *de bonis testatoris;* and the terre-tenants will be permitted to defend *pro interesse suo*. These principles are applicable to this case. It is proper that the administrator of the mortgagor, who is the principal debtor, should be made a party, in order that he may have the opportunity to prove the payment of the debt. And this is necessary also for the security of the terre-tenants, who cannot be presumed to be acquainted with

(Roberts *v.* Williams.)

the state of the account, between the mortgagor and mortgagee. Here the plaintiff has not thought proper to pursue this course before proceeding against the terre-tenants; and this, according to the cases cited, is clearly erroneous. The plaintiff seems to have been sensible of this error; for on the same day on which the judgment was given, the Court rendered judgment against the administrator for the amount ascertained by the verdict against the terre-tenants. But a slip of this kind cannot be thus noticed; for as the mortgagor is the party against whom suit is to be brought, until he is in Court, the cause cannot proceed, for want of parties. If he does not appear, the plaintiff must proceed, for want of appearance, to judgment by default; and having thus disposed of the legal party, he may pursue the land in the possession of the terre-tenants. Rendering judgment against the administrator is not a formal, but it is a substantial objection to the proceeding. If the judgment be permitted to stand, and hereafter the mortgaged premises should prove inadequate to pay the amount of the verdict, the estate of the deceased, or the administrator personally, must make good the deficiency. In a suit on the bond which accompanies the mortgage, the verdict on the *scire facias* would be conclusive as to the amount due. It would not be open to the administrator to insist on payment by the judicial sale; as the same subject-matter having once been tried, could not be renewed in a suit between the same parties. And yet it is too clear for argument, as has been before shown, that so far as respects the administrator, the debt has been paid.

We are further of the opinion, that the Court erred in omitting to swear the jury as to James Wells and Thomas Lowry. The *scire facias* was in the most approved form, against the administrator and terre-tenants. The sheriff having summoned them as terre-tenants, they are as much parties on the record, as if named in the writ. Lowry and Wells, in the first instance asked leave to file special pleas; which was overruled by the Court. Afterwards they filed disclaimers; but in filing disclaimers, they do not cease to be parties. This is ruled in *Britton* v. *Mitchell*, (5 *Watts*, 67,) where the course to be pursued is plainly pointed out. The Court may compel a party who disclaims to give judgment, which will secure costs and damages; or they may order him to plead *instanter;* on which the parties may go to trial. In *Morris* v. *Morris*, (5 *Watts*,) it is decided, that a plaintiff having issued a *scire facias*, with notice, to several terre-tenants, cannot enter a *nolle prosequi* as to some of them, and proceed against the others. After having placed parties on the record, it is not in the election of the plaintiff, and one of several terre-tenants, to treat them as if they had never been summoned. It may be of the utmost importance to the defendant, that all who have once been parties, should remain so, as they may be liable for contribution, and for the costs. The Court orders the jury to be sworn as to the other defendants, omitting two who had

(Roberts *v.* Williams.)

been summoned; and, what is not the least objectionable feature in the case, Lowry, one of them, is examined as a witness to prove the agreement, which is the foundation of the plaintiff's action.

We would not wish to be understood as expressing a decided opinion whether the equity of the plaintiff's case can be reached in this form of suit.   Perhaps justice may be done by a replication to the defendant's plea, setting forth the agreement, and averring that the terre-tenants had notice of the agreement.   Whether Lowry was a competent witness, does not seem to have been made a point at the trial.   It may, however, be well worthy of serious consideration, whether, independently of his position as a party, he has not such an interest as renders him incompetent.   In the view which we have taken of the case, it is immaterial to the case whether the Court erred in rejecting the evidence contained in the bill of exceptions.   Nor is it necessary to notice the exceptions to the charge, except, as has been already done, in the preceding remarks.

Judgment reversed, and a *venire de novo* awarded.