## Musser v. Grove.

A. C. Dale and S. D. Gettig, for plaintiff; Ivan Walker, for defendant.

FLEMING, P. J., September 10, 1930.—Upon the representation of plaintiff's counsel that certain authorities had been discovered which would clearly show our opinion filed May 20, 1930, to be in error, and, in order to protect plaintiff's right of appeal, pending argument and a consideration of these authorities, we opened judgment in this matter, at the cost of the plaintiff, and have heard and considered the parties further.

We feel that plaintiff's counsel have lost sight of the fact that this is a proceeding under the Uniform Declaratory Judgments Act, wherein we are called upon to pass upon certain specific questions and to enter judgment in accordance with our determination of these questions. These questions are:

First. Did the said Earl C. Musser acquire a valid and subsisting deed, clear of any encumbrances for the premises, and not subject to the interest or interests of any other person or persons in said real estate under and by virtue of the sheriff's deed recorded in Sheriff's Deed Book, volume 1, page 254, in the Recorder's Office of Centre County?

Second. Did the purchaser, Earl C. Musser, obtain a good and absolute title against any person or persons other than himself?

Third. Did the said Earl C. Musser, the petitioner, acquire such a title that he can make a deed to a purchaser or purchasers clear of any encumbrance or interest whatsoever in any one else but himself?

These three questions may aptly be embodied into one, to wit:

Did Earl C. Musser, the plaintiff, acquire such a title by virtue of the sheriff's deed, recorded in Sheriff's Deed Book, volume 1, page 255, as to enable him to convey the premises described therein, wholly free of any interest or encumbrance of any nature or character whatsoever?

We are not called upon to pass upon a right to attack the sheriff's sale upon which Musser's title is founded, either directly or collaterally, nor are we called upon to determine whether a sheriff's sale shall be set aside, nor as to

the rights of any party to intervene, nor as to the right of possession to the land between two or more claimants. We are asked to say, in short, whether the proper steps were taken in the foreclosure proceedings by which the sheriff's sale was had to Musser, to properly vest in the sheriff the right to convey the interest, legal and equitable, of the real owner. If such procedure was had as is prescribed by law, the sale is a valid one and plaintiff's title would be secure. On the other hand, if such procedure was not had as is prescribed by law, the sale is a nullity and plaintiff would receive no title thereby.

We have heretofore, in our opinion filed May 20, 1930, expressed ourselves in this regard, and, unless the additional authorities cited by plaintiff, upon the reconsideration thereof, are controlling and convincing, our prior judgment must stand. It will, therefore, be our principal duty herein to review these authorities and the arguments of counsel, *pro* and *con*, and to reach a final decision which will comply with the purposes of the act under which this proceeding is brought.

Our lawmakers quite early prescribed the manner in which mortgages were to be foreclosed. Section six of the Act of July 12, 1705, 1 Sm. Laws, 57, provides, in part, as follows:

"That in every such case, it shall and may be lawful to and for the mortgagee or mortgagees, and him, her or them, that grant the said deeds of defeazance, and his, her and their heirs, executors, administrators or assigns, at any time after the expiration of twelve months, next ensuing the last day whereupon the said mortgage-money ought to be paid, or other conditions performed as aforesaid, to sue forth a writ or writs of *scire facias*, which the Clerk of the Court of Common Pleas for the county or city where the said mortgaged lands or hereditaments lie, is hereby impowered and required to make out and dispatch, directed to the proper officer, requiring him, by honest and lawful men of the neighborhood, to make known to the mortgagor or mortgagors, his, her, or their heirs, executors or administrators, that he or they appear before the Magistrates, Judges or Justices of the said court or courts, to shew, if any thing, he or they have to say, wherefore the said mortgaged premises ought not to be seized and taken in execution for payment of the said mortgage-money, with interest, or to satisfy the damages which the plaintiff in such *scire facias* shall, upon the record, suggest, for the breach for the non-performance of said conditions."

This procedure is wholly statutory and the requirements of the acts should be strictly followed. "As to terre-tenants, under the Act of 1705, it was not necessary to make them parties: Mather *v.* Clark, 1 Watts 491; Mevey's App., 4 Pa. 80. But the practice was to make them parties; if this was not done, they were permitted to intervene pro interesse suo: Fraley *v.* Steinmetz, 22 Pa. 437. A terre-tenant may appeal from an irregular or illegal judgment entered against the executor: Mutual Life Ins. Co. *v.* Tenan, 188 Pa. 239. When made a party by suggestion, he is bound to make every defense available: Nace *v.* Hollenback, 1 S. & R. 540; Blythe *v.* McClintic, 7 S. & R. 341; Stevens *v.* North Pa. Coal Co., 35 Pa. 265. Generally speaking, this will include such defenses as the mortgagor may make (Harrison's Est., 31 Pa. Superior Ct. 485), except those treated as personal.

"By the Act of July 9, 1901, P. L. 614, as amended by the Act of April 23, 1903, P. L. 261, the real owners of the land are made necessary parties. It provides, 'The plaintiff . . . in any writ of scire facias . . . shall file with his præcipe an affidavit setting forth to the best of his knowledge, information and belief who are the real owners of the land charged . . . and all such

persons shall be made parties to the writ.' The effect of the act is to make the terre-tenants necessary parties:" Federal Land Bank of Baltimore *v.* King et al., 294 Pa. 86, 95, 96.

Thus, it is clear that prior to the passage of the Act of 1901, as amended by the Act of 1903, the necessary parties to a foreclosure proceeding were the mortgagor or mortgagors, his, her or their heirs, executors or administrators, and that after the passage of such acts the real owner became an additional necessary party. This is still required unless the plaintiff abides by the requirements of section one of the Act of April 4, 1919, P. L. 38, which provides as follows:

"That where the plaintiff in a writ of scire facias sur mortgage shall file with the præcipe a release of the mortgagor or mortgagors and his, her or their heirs, executors, and administrators, from all personal liability for the debt secured by the mortgage being foreclosed, said parties need not be joined as defendant or defendants, but the real owner or owners charged may in that event be named as the only defendant or defendants, and the title acquired by a sale under a judgment of foreclosure in such cases shall be as full and complete a title as if said mortgagor or mortgagors had been duly named in, and served with, said writ, and judgment duly entered against him, her, or them also."

Reviewing briefly this legislation, we note that, by the Act of 1705, *supra,* the mortgagee or mortgagees are required "to make known to the *mortgagor or mortgagors,* his, her or their heirs, executors or administrators," that they should appear and show cause, if any they have, why a judgment should not be had against them and a writ of execution issued upon such judgment. By the Acts of 1901 and 1903, not only are the mortgagor or mortgagors, his, her or their heirs, executors or administrators, required to be so proceeded against, but the real owner as well. When, and only when, the mortgagee files with the præcipe, as provided by the Act of 1919, a release of the mortgagor or mortgagors, his, her or their executors or administrators, is the requirement that such mortgagor or mortgagors, his, her or their heirs, executors or administrators, be joined as defendants dispensed with.

In the case at bar, according to the petition of the plaintiff herein, we find that one Allen Sheldon in his lifetime mortgaged the premises, the title to which is in question, to William Harper; that William Harper died testate, naming Jared Harper and Chestie A. Harper as his executors; that such executors subsequently died and Maize H. Brouse and Carrie A. Harper were substituted as the personal representatives of William Harper, deceased; that Allen Sheldon, mortgagor, died, having formerly conveyed the premises, the title to which is in question, to Julia Curtin, a single woman, who conveyed the same to William Groh Runkle, in whom legal title was vested at the time of the foreclosure.

An examination of the foreclosure proceedings discloses that the same was begun by the filing of what is endorsed as "præcipe for scire facias sur mortgage, recorded in Centre County in Mortgage Book 28, page 278, suggestion of death, affidavit of ownership and plaintiff's statement." The suggestion of death is as to William Harper, mortgagee, and as to Jared Harper and Chestie A. Harper, his executors. No suggestion of the death of Allen Sheldon, mortgagor, appears in the record, although counsel for the plaintiff assert his death and such fact is averred in the petition of the plaintiff. The parties defendant are named as "Allen Sheldon, defendant, and W. G. Runkle, terre tenant." No release of the mortgagor or his heirs, executors or administrators was filed with the præcipe.

The scire facias sur mortgage was forthwith issued, naming Allen Sheldon as defendant and W. G. Runkle terre tenant. The sheriff's return appears as follows:

"Now, August 10, 1927 served the within summons together with a certified copy of plaintiff's statement and suggestion of death and affidavit of ownership to appear and answer endorsed thereon, on Wm. G. Runkle, defendant named in the writ as terre tenant, and gave him copy of each. So. ans. E. R. Taylor, Sheriff."

There is no return of any sort as to Allen Sheldon, defendant.

Subsequently, judgment was entered against W. G. Runkle, terre tenant, for want of an affidavit of defense. No judgment was entered against Allen Sheldon, defendant.

Still later, a præcipe for levari facias was filed, wherein such writ was directed to issue against Allen Sheldon, defendant, and W. G. Runkle, terre tenant. Such writ was issued and directed against Allen Sheldon, defendant, and W. G. Runkle, terre tenant. Sale was had and the property sold to Earl C. Musser, the plaintiff petitioner herein.

The plaintiff herein relies strongly upon the provisions of section nine of the Act of July 12, 1705, 1 Sm. Laws, 57, which provides as follows:

"*Provided also*, That if any of the said judgments, which do or shall warrant the awarding of the said writs of executions, whereupon any lands, tenements or hereditaments have been or shall be sold, shall, at any time hereafter, be reversed for any error or errors, then, and in every such case, none of the said lands, tenements or hereditaments, so as aforesaid taken or sold, or to be taken or sold upon executions, nor any part thereof, shall be restored, nor the Sheriffs' sale or delivery thereof, avoided, but restitution, in such case, only of the money or price for which such lands were or shall be sold."

We invite careful attention to the fact that the above-recited act speaks only of judgments "which do or shall warrant the awarding of the said writs of executions." Does the judgment purported to have been obtained, in the instant case, so warrant the issuance of the writ of levari facias upon which the sale to the plaintiff was had? To a *bona fide* purchaser at a sheriff's sale of lands subsequently in dispute in ejectment, section nine of the Act of July 12, 1705, 1 Sm. Laws, 57, is a complete protection against every defect or irregularity, except when the defect or irregularity appears upon the face of the judgment on which the land was sold: Shannon *v.* Newton, 132 Pa. 375. The Act of 1705 was passed to protect the titles of purchasers, and has been repeatedly held as a complete protection against every defect or irregularity, except when the judgment was void upon its face: Podol *v.* Shevlin, 284 Pa. 32, 35. When a judgment is incapable of supporting an execution, and the defect is apparent upon the face of the record, the sheriff's vendee takes no title, even if the purchaser is without notice of the terre tenant's rights: Tenan *v.* Cain, 188 Pa. 242. Section nine of the Act of 1705 protects the purchaser in the event of a reversal of the judgments under which the sale was made, but not where the sale was made under a void process: Burd *v.* Lessee of Dansdale, 2 Binn. 80.

The acknowledgment of a sheriff's deed is a judicial act, and it concludes all mere irregularities, however gross, in the process and sale. After acknowledgment, the validity of the title acquired by the purchaser cannot be questioned in a collateral action involving the title except for the absence of authority or the presence of fraud in the sale: Keystone Collieries *v.* Mudge, 256 Pa. 130; Lyle *v.* Armstrong (No. 2), 235 Pa. 227.

632

We are of the opinion that the judgment obtained in the instant case did not warrant the awarding of an execution thereon; that it was a void judgment obtained in direct violation of the mandatory provisions of section six of the Act of 1705, *supra*. In the absence of the filing of a release with the præcipe, as permitted by the Act of 1919, *supra*, the mortgagor, his heirs, executors or administrators, were necessary and essential parties to the foreclosure. In Taylor *v.* Beekley, 211 Pa. 606, 608, Mr. Justice Potter says, in part, as follows:

"The title had passed from the mortgagor to her [speaking of the terre tenant]; the writ was served upon her; she had her day in court; no defense was made and judgment was entered against her as the only party really interested. It may be admitted that any title remaining in the mortgagor would not be swept away, except by service of notice upon her [speaking of the mortgagor] and the entry of judgment duly followed by sale."

Again, in Federal Land Bank of Baltimore *v.* King et al., 294 Pa. 86, 97, we find Mr. Justice Kephart to say, in part, as follows:

"The terre-tenants were served; one filed an affidavit and the other did not appear, and it is now strongly urged that there could not be a valid judgment against the terre-tenant in the absence of judgment against the mortgagor's administrator, and Roberts *v.* Williams, 5 Wharton, 170, is cited to sustain this position. We think it does not justify the statement that a judgment could not be entered against the terre-tenant until the judgment was entered against the mortgagor, but it is authority for the proposition that the mortgagee could not 'pursue the land in possession of the terre-tenant' until judgment was had against the mortgagor."

The patent fact is that no judgment of any nature or character whatsoever was obtained against Allen Sheldon, mortgagor, his heirs, executors or administrators. Nor was any attempt to obtain such made, other than by naming Allen Sheldon as the defendant in the præcipe filed. The plaintiff plainly chose to pursue the method of procedure established by section six of the Act of 1705—whether he knew or did not know of the provisions of the Act of 1919 is not material. He could not "pursue the land in possession of the terre-tenant until judgment was had against the mortgagor:" Roberts *v.* Williams, 5 Wharton, 170; Federal Land Bank of Baltimore *v.* King et al., 294 Pa. 86. There was no service of notice upon Allen Sheldon, mortgagor, his heirs, executors or administrators, or the entry of judgment duly followed by a sale in this case. We must conclude, therefore, that "any title remaining" in Allen Sheldon, his heirs, executors or administrators, "would not be swept away." The fact that there is small probability of any title remaining in Allen Sheldon, his heirs, executors or administrator, is not material. The doubt remains sufficient to leave a cloud upon the plaintiff's title and to compel all questions herein propounded to be answered in the negative.

The failure to obey the mandatory requirements of section six of the Act of 1705, *supra*, wholly invalidates the proceeding, leaving the writ, upon which the sheriff sold to plaintiff, a void process, as being unwarranted by the lack of a judgment against the mortgagor upon which to found the same. This appears clearly upon the record and removes from the plaintiff that protection extended by section nine of the Act of 1705, *supra*. The required judgment being lacking, and the process upon which the sheriff acted being void by reason thereof, there was such a want of authority in the sheriff to make the sale as to deprive the plaintiff of the protection accorded in the cases cited by him. See Keystone Collieries *v.* Mudge, 256 Pa. 130; Lyle *v.* Armstrong (No. 2), 235 Pa. 227.

The opening of judgment formerly entered in this proceeding was caused by the discovery of the case of Federal Land Bank of Baltimore *v.* King et al., 294 Pa. 86, a case frequently cited herein in support of our conclusions. While the notation in the new "Purdon," citing this case, undoubtedly appears to hold plainly in manner *contra* to our conclusions, and has undoubtedly inspired false hopes in plaintiff's counsel, a careful reading of· this case shows that such is not the case. The dicta cited herein clearly rule in favor of our conclusions. The case in its entirety arose from the entry of judgment for want of an affidavit of defense in a mortgage foreclosure proceeding. The mortgagor was originally named as a party defendant, as was his administrator and his heirs. Terre tenants were also made parties. The writ was returned *nihil habet* as against the mortgagor, who was dead, and no *alias* writ was made part of the record. There was personal service as to the heirs, the administrator and the terre tenant. The administrator appeared and pleaded payment. On the same day, as heir and terre tenant (but not as administrator), he filed an affidavit of defense. No appearance was entered for the other heir or the other terre tenant. A rule was taken for judgment for want of a sufficient affidavit of defense, and the court below made the rule absolute and entered a general judgment for the amount claimed. The appellant contended that the court below could not enter a general judgment against all defendants, and that unless there was a valid judgment against the mortgagor or his administrator, judgment could not be entered against the heirs or terre tenants. The appellate court affirmed judgment against all parties except the administrator and struck off the judgment as to him. The case does not hold that a plaintiff may ignore the mortgagor, his heirs, executors or administrators, and proceed only against the terre tenant, without filing the release in the manner provided by the Act of 1919, *supra*. It clearly says that where the death of the mortgagor is known, as has been stated by plaintiff's counsel to be the fact here, it is not necessary to name both the heirs and the executor or administrator, but that it is advisable to name the heirs and the executors or administrators as parties. In the instant case, notwithstanding the fact that it was known, as stated by plaintiff's counsel, that the mortgagor was dead, he was named as a party and no attempt at service made, and the heirs and executors or administrators were omitted entirely.

The opinion of Judge Macfarlane, in McDonough, for use, *v.* Barnes, 30 Dist. R. 263, cited by plaintiff, does not in any manner controvert our conclusions in the instant case. In fact, it is in support of such conclusions. Judge Macfarlane says: "The Act of April 4, 1919, P. L. 38, does not require the plaintiff to file a release." This is wholly true. It is optional with the · plaintiff whether he files a release or not. The only provision is that, if he does so, he need not join the mortgagor or his heirs, executors or administrators as parties defendant with the terre tenant. "Nor does it require the joining of the heirs, etc., if the release is not filed." This is likewise wholly true, as he is speaking of the Act of 1919, but the learned judge does not go so far as to say, as is contended by the plaintiff here, that such act relieves the plaintiff of the necessity of joining the heirs, executors or administrators as directed by the Act of 1705, section six, *supra*. The learned judge continues to say: "If the plaintiff files the release, he need not join the heirs, executors and administrators." This is also wholly true and is a positive exposition of the negative statement, that if the plaintiff does not file the release, he must join the heirs, executors or administrators.

634

Reading further in the learned judge's opinion in McDonough, for use, v. Barnes, 30 Dist. R. 263, 264, we find him to say:

"This is a motion to strike off and not a rule to open, and the fact that the mortgagor is dead does not appear on the face of the record. The sheriff has returned *nihil*, but no return has been made on the *alias*. The day before the *alias* was issued, judgment was entered against the terre-tenant and the tenant in possession, in default of an appearance, for the principal, interest and attorney's commission. The motion assigns as a reason that the use plaintiff had knowledge of the death of the mortgagor and of the names and addresses of the heirs, and that no letters of administration had been issued, and had not made the heirs parties defendant. It is urged that where the plaintiff knows of the death and an objection is raised before judgment, he cannot take judgment on two *nihils*. That such a judgment and sheriff's sale thereunder give good title and cannot be attacked collaterally is well settled. The practice is based upon a fiction, and it would seem that an heir who was a terre-tenant or tenant in possession has standing to object; otherwise, his rights can be swept away without notice. We do not decide the question. There is no judgment against the mortgagor, and the entry of judgment against the petitioner before the judgment against the mortgagor is sufficient ground for striking off judgment against him."

This is a broader statement than that of Mr. Justice Kephart in Federal Land Bank of Baltimore v. King et al., 294 Pa. 86, 97, *supra*, commenting upon the scope of Roberts v. Williams, 5 Wharton, 170, but is in accord with Mr. Justice Kephart's dictum that the mortgagee cannot pursue the land in possession of a terre tenant until judgment is had against the mortgagor.

In conclusion, therefore, we note that mortgagee herein filed no release of the mortgagor, his heirs, executors or administrators, with the præcipe herein; that by their failure so to do they remained bound by the mandatory requirements of section six of the Act of 1705, which must be strictly followed; that they did not give the notice compelled to be given by such act to the mortgagor, his heirs, executors or administrators; that such heirs, executors or administrators were not named as parties defendant; that no semblance of an effort to serve the mortgagor appears upon the face of the record in the instant case, as was attempted but not completed in both Federal Land Bank of Baltimore v. King et al., 294 Pa. 86, and in McDonough, for use, v. Barnes, 30 Dist. R. 263; that no judgment was attempted to be obtained against either the mortgagor or his heirs, executors or administrators; that by reason of such omission the mortgagees were without authority to issue a writ of execution upon the judgment obtained solely against the terre tenant in possession; that such writ issued thereon was a void process, and appears as such upon the face of the record; that the sheriff was without authority to make sale to plaintiff petitioner, his process being a void one; that for the above reasons, as well as that the judgment did not warrant an execution to pursue the lands in possession of the terre tenant, as well as by reason of absence of authority to sell in the sheriff, the plaintiff petitioner is without the protection of the provisions of section nine of the Act of 1705; and that the plaintiff petitioner took no valid title thereby.

We are, therefore, of the opinion that we did not err in our former opinion, filed May 20, 1930, and that the additional authorities cited by plaintiff's counsel upon reargument confirm rather than contradict such former opinion.

We, therefore, again answer all questions propounded under the petition filed herein in the negative.

And now, September 10, 1930, judgment is entered in favor of the defendant and against the plaintiff petitioner. All costs to follow judgment herein.